(Decided 16th January, 1891.)

---

CHARLES F. PITTS, JR. *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Dedication—Easement—Measure of Damages.*

In order to make out a dedication, an intent on the part of the owner to dedicate his land to the particular use alleged, is absolutely essential, and unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists.

One of the modes by which dedication may be evidenced is where a street is dedicated on a plat made by authority, or by the party

himself, as passing over certain lands, and the owner subsequently conveys lots fronting or bounding on such street, he remaining the owner of the fee in the bed of the street; this is held to be a dedication of the land over which the street passes, to the public use, and on opening the street the owner of the fee will be entitled to nominal damages only as compensation.

In such case the sale and conveyance of lots so bounded upon the street in the plan of a town or city, imply a grant or covenant to the purchaser that the street thus indicated and called for shall be and remain forever open to the use of the public, free from all claim or interference of the proprietor of the estate therein inconsistent with such use.

But the implication of such a covenant may be rebutted in many ways, as by other express covenants or agreements between the parties, or by the fact that the call for the street was made merely for the purpose of convenient description of boundaries, as in the case of a partition of an estate among heirs, or by any other facts and circumstances showing the absence of an intention to dedicate to public use.

The owner in fee of a large unimproved tract of land in the City of Baltimore, part of which was in the beds of Ann street, Register street, and other unopened streets as laid down on the plat of the city, made a lease of part thereof in separate lots. The deed of lease described each of the lots, and whenever any of them bounded or fronted on Ann street or Register street these streets were duly called for in the description of its boundaries. It provided that alleys ten feet wide, and which were specially designated "shall be forever kept open for the use in common not only of all lots bounding on each of said alleys respectively, but also on all the lots on any other of said alleys which communicates with said alley in any manner whatsoever." And in the concluding part there was this clause : "And it is hereby expressly declared that it is not intended by anything herein contained to dedicate any of the streets or alleys mentioned and referred to in this lease, or the beds of the same, or any part thereof, the same being herein mentioned and referred to for the purpose of location and description merely, and not for the purpose of dedication; and Register street being hereby intended to be widened for the benefit only of the parties claiming under this lease, and not for the benefit of the public, it not being intended to give the public any rights whatsoever in any of the

streets or alleys mentioned in this lease." Under proceedings for opening Ann street and Register street, the street commissioners awarded only nominal damages to P. who had become the grantee of the interest of the lessors in said property, for so much thereof as was in the beds of said streets. On appeal from the action of the commissioners, it was HELD :

1st. That there had been no dedication of the property lying in the beds of said streets.

2nd. That it was not the intention of the parties to the lease that the lessee should acquire perpetual easements over the streets in favor of the lots.

3rd. That if any easement was thereby granted it was one of a temporary character merely, or the right to use the streets until they were condemned and opened as public highways.

4th. That it was evidently the purpose of the lessors as well as the lessee to secure to the former full and substantial compensation for the beds of the streets whenever they should be thus condemned and opened.

5th. That this was a material part of the lease and the Court could not strike down said clause by ruling that P. as grantee of the lessors could only recover such damages as the jury might find he would sustain by the condemnation of said streets as public highways, taking into consideration the fact that he held the beds of said streets subject to said easements.

Where the owner of land conveys a part thereof binding on an unopened street to A. in such terms as effect a dedication of the bed of the street, on the doctrine of an implied grant or covenant, no subsequent deed from the owner to a third person of another portion of the same land can have any effect in preventing such dedication.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—At the trial Charles F. Pitts, Jr., the appellant from the action of the Commissioners for Opening Streets, offered the four following prayers, that

is to say, two in the matter of Ann street opening, and two in the matter of Register street opening:

### Ann Street Opening.

1. If the jury shall find the facts connected with the property described in the deed offered in evidence dated August 19th, 1857, from Malcolm and Talbott, trustees, to John Boyd, are as testified to by the witness, John Boyd, then under a proper construction of the said deed, taken in connection with the said trustees' advertisement and report of sale, and in the light of the facts. and circumstances surrounding the transaction, the said sale and deed did not have the effect of dedicating, and must not be held to have dedicated the bed of Ann street between Townsend street and North avenue; nor did any of the subsequent conveyance of the said property embraced in the said deed, nor the deed offered in evidence by the Mayor and City Council of Baltimore, from said trustees to Ellis, have the effect of dedicating said part of Ann street, and the jury must award as damages for the bed of said part of said Ann street such a sum as they shall find to be the fair market value of the ground within its limits, estimated as if Ann street was not to be opened thereon.

2. That the jury cannot, upon the present appeal, increase or diminish the amount of benefits assessed by the Commissioners for Opening Streets, upon Lots Nos. 10 and 11, mentioned in the proceedings in this Court.

### Register Street Opening.

1. If the jury shall find that the facts connected with the property described in the deed offered in evidence, dated August 19th, 1857, from Malcolm and Talbott, trustees, to John Boyd, are as testified to by the witness, John Boyd, then under a proper construction of the said deed, taken in connection with the said trustees' advertisement and report of sale, and in the light of the facts

and circumstances surrounding the transaction, the said sale and deed did not have the effect of dedicating, and must not be held to have dedicated the bed of Argyle alley, between Townsend street and North avenue, nor did any of the subsequent conveyance of the said property embraced in the said deed, nor the deed from said trustees to Ellis, offered in evidence by the Mayor and City Council of Baltimore, have the effect of dedicating the eastern half of said alley, and the jury must award as damages for the bed of said part of said Register street, formerly Argyle alley, such a sum as they shall find to be the fair market value of the ground within its limits, estimated as if Register street was not to be opened thereon.

2. That the jury cannot, upon the present appeal, increase or diminish the amount of benefits assessed by the Commissioners for Opening Streets, upon Lot No. 12, mentioned in the proceedings in this Court.

And the Mayor and City Council of Baltimore, called the defendant, offered ten prayers, of which only the following need be inserted:

4. If the jury find that the trustees, Malcolm and Talbott, offered at public sale the property laid out according to the sale plat offered in evidence in June, 1853, and then and there sold, among others, certain lots at the southwest corner of North avenue and Argyle alley, now Register street, to Alexander B. Ellis, and conveyed the same to him by deed, dated April 23rd, 1856, recorded in Liber E. D., No. 104, folio 163, offered in evidence, and shall further find that the sale to Boyd, under whom the appellant claims, was made subsequent to the sale to Ellis, and that Boyd's deed was also subsequent to that of Ellis, then by the true construction of the sale and deed to Ellis, he became entitled to the use of the whole bed of Argyle alley, as laid out upon said plat, and the same became thereby dedicated, and the

Pitts *vs.* Mayor, &c. of Baltimore.

appellant can recover no damages in the Register street case.

$4\frac{1}{2}$. If the jury find the facts set out in the defendant's fourth prayer, then by the true construction of the sale and deed to Ellis, he became entitled to the use of the whole bed of Argyle alley, south of the six acre lot mentioned in the advertisement of the trustees, and the same became thereby dedicated, and the appellant can only recover nominal damages for that part of Argyle alley, now Register street.

8. By the true construction of the lease from Kuper and others, to Tucker, dated March 20th, 1888, and offered in evidence of the appellant, the lessee therein and his assigns are entitled to the use of the beds of Ann street and Register street, as mentioned and called for in said lease, for the use and benefit of the lots fronting thereon respectively; and the appellant in these cases can therefore only recover such damages as the jury may find he will sustain by the condemnation of the bed of Ann street as a public highway, in the Ann street case, and by the condemnation of the bed of Register street as a public highway, in the Register street case; taking into consideration the fact that he holds the beds of said streets subject to said easements.

The Court (HARLAN, J.,) granted the second prayer of the appellant, Charles F. Pitts, Jr., in the Ann street opening and in the Register street opening, and rejected his first prayer in the Ann street opening and in the Register street opening, and rejected all the prayers of the Mayor and City Council of Baltimore, except those numbered four and a half, and eight, which were granted. Charles F. Pitts, Jr., excepted, and appealed.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Bernard Carter*, for the appellant.

*Albert Ritchie, City Counsellor*, for the appellee.

MILLER, J., delivered the opinion of the Court.

Ordinances were passed on the 8th of June, 1889, for the opening of Ann street, as laid down on Poppleton's Plat, from Oliver street to North avenue, and of Register street, (formerly Argyle alley) between the same points. The appellant, who is the owner of the whole bed of Ann street between Townsend street and North avenue, and of one-half the bed of Register street between the same points, claimed compensation therefor, but the Street Commissioners determined that these streets had been *dedicated to public use*, and allowed him nothing, or nominal damages only. An appeal was taken in each case to Baltimore City Court, where they were tried together, and they come here upon exception taken to the rulings of that Court in granting and rejecting certain prayers offered on either side.

It has been decided by this Court in a number of cases, that in order to make out a dedication, an *intent* on the part of the owner to dedicate his land to the particular use alleged, is absolutely essential, and unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists. The evidence of such intention is furnished in various ways; but as dedication will be presumed where the facts and circumstances of the case clearly warrant it, so that presumption may be rebutted and altogether prevented from arising by circumstances incompatible with the supposition that any dedication was intended. One of the modes by which dedication may be evidenced is where a street is designated on a plat made by authority, or by the party himself, as passing over certain lands, and the owner subsequently conveys lots fronting or bind-

Pitts *vs.* Mayor, &c. of Baltimore.

ing on such street, he remaining the owner of the fee in the bed of the street; this is held to be dedication of the land over which the street passes to the public use, and on opening the street the owner of the fee will be entitled to nominal damages only as compensation.   In such case the sale and conveyance of lots so bounded upon the street, in the plan of a town or city *imply* a grant or covenant to the purchaser that the street thus indicated and called for, shall be and remain forever open to the use of the public, free from all claim or interference of the proprietary of the estate therein, inconsistent with such use.   It is supposed the existence of the street, either present or prospective, entered into the consideration of the purchase, and thus the grantor of the lot or lots sold, has been compensated for the public use of the street, and is therefore estopped to make any further claim for such use as against the public.   But the implication of such a covenant may be rebutted in many ways, as by other express covenants or agreements between the parties, or by the fact that the call for the street was made merely for the purpose of convenient description of boundaries as in case of the partition of an estate among heirs, or by any other facts and circumstances showing the absence of an intention to dedicate to public use.   As sustaining these propositions we refer to the cases of *White vs. Flannigain,* 1 *Md.,* 539; *Moale vs. Mayor, &c. of Baltimore,* 5 *Md.,* 314; *Hawley, et al. vs. Mayor, &c. of Baltimore,* 33 *Md.,* 270; *McCormick, et al. vs. Mayor, &c. of Baltimore,* 45 *Md.,* 512; *Tinges vs. Mayor, &c. of Baltimore,* 51 *Md.,* 600; *Hall vs. Mayor, &c. of Baltimore,* 56 *Md.,* 187; *Mayor, &c. of Baltimore vs. White & Shipley,* 62 *Md.,* 362, and *Glenn vs. Mayor, &c. of Baltimore,* 67 *Md.,* 390.   The present cases, so far as the question of dedication is involved, must be disposed of by application of the principles estaplished by these authorities.

The record shows that a large tract of land in the northwestern part of Baltimore City, partly within and partly beyond the then city limits, was sold in 1853, by Malcolm and Talbott, trustees, under certain deeds of trust, for the benefit of creditors. On this tract was a mansion or dwelling house, and the trustees, in order to sell it to the best advantage, had a plat made of the whole tract, dividing it into sections, each of which was subdivided into building lots. On this plat there were located Ann street, Argyle alley, and several other then unopened streets laid down on Poppleton's Plat, and also many alleys apparently laid out by the trustees, on all of which building lots were delineated as fronting or binding. The part of this estate sold by these trustees to John Boyd, is that with which this controversy is mainly concerned. In the advertisement of sale, sections 22, 27, 33 and 34, were described as containing "about six acres, on which is a large and commodious dwelling, with all the necessary outbuildings, and about six acres of ground attached thereto, fronting on Northern avenue, Ann and Wolfe streets. This was formerly the country seat of Dr. Dunkel, and is now ready for the occupation of any purchaser desiring a first class house. The beds of the streets included in the said six acres will be sold with the house, and the streets are to be held by the purchaser *until the same are legally opened.*" These six acres were not sold at public sale, but were subsequently sold at private sale, including the adjoining sections 23 and 26, extending on the south as far as Townsend street, to John Boyd for $12,000, and the deed to him from the trustees, which was executed on the 19th of August, 1857, conveys the six acres with the two additional sections as one lot. The outlines, so far as it is necessary to refer to them, run " westwardly along the middle or centre of Townsend street to intersect a line drawn north and south along

the middle or centre of Argyle alley, thence northwardly along the middle of Argyle alley to the centre of North avenue." The deed makes no mention of Ann street, but the whole bed of it, between Townsend street and North avenue, is included within the outlines just mentioned. It conveys the land within these outlines, "subject to the rights of the purchasers of the other portions of the trust estate, to the use of all the streets, avenues, lanes and alleys in any manner intersecting or bounding upon the above described parcel of land *whenever the same shall be legally condemned and opened.*"

After Boyd's death, the trustees, under his will, sold and conveyed this property to John Kuper, George R. Clarke, and William M. Burgan for $30,000. The conveyance to them, which bears date March 3rd, 1888, describes the property as being the same ground that was conveyed to Boyd by Malcolm and Talbott by their deed of the 19th of August, 1857. It also contains the same description of the outlines as running along the middle of Townsend street and Argyle alley, and the land is conveyed to the grantees, "subject, however, to all the reservations and rights with reference to streets and alleys through the above mentioned grounds contained in the deed from Malcolm and Talbott to Boyd."

Shortly afterwards, on the 20th of March, 1888, the grantees in the last mentioned deed executed to Erastus B. Tucker, a lease for ninety-nine years renewable forever, of one hundred and thirty-five lots of ground, "being parts of the whole lot of ground" conveyed to them by the deed of the 3rd of March, 1888. This instrument is a very long one. It describes each of the lots, and whenever any of them bind or front on Ann street or Register street, these streets are duly called for in the description of its boundaries. It provides that alleys *ten feet wide,* which are specially designated and are eleven in number, "shall be forever kept open

for the use in common, not only of all lots bounding on each of said alleys respectively, but also of all the lots which bound on any other of said alleys which communicates with such alley in any manner whatsoever.'' And in the concluding part there is this important clause: ''And it is hereby expressly declared, that it is not intended by any thing herein contained to *dedicate* any of the streets or alleys mentioned and referred to in this lease, or the *beds* of the same, or any part thereof, the same being herein mentioned and referred to *for the purpose of location and description merely, and not for the purpose of dedication;* and Register street being hereby intended to be widened for the benefit only of the parties claiming under this lease, and not for the benefit of the public; *it not being intended to give the public any rights whatsoever in any of the streets or alleys mentioned in this lease.''* This lease was signed both by the lessors and the lessee, and was duly recorded.

After this the affairs of the lessors were placed in the hands of receivers, who, acting under a decree in equity, sold the interest of the lessors in this property to Charles F. Pitts, Jr., the appellant, for $22,500. By their deed to Pitts, dated the 5th of June, 1889, the receivers state that they had sold to him for this sum ''all the property, divided into one hundred and thirty-five lots, which is fully set forth on the plat annexed to their report of the said sale; the said sale including all the title and interest of the parties to the said proceedings, to one-half of the beds of North avenue, Durham, Townsend, and Register streets, bounding on the property, and the beds of all the other streets and alleys on the said plat, (the said sale comprehending therefore all the right, title and interest of the parties to the said cause, in and to all the ground bounded by, and included between the centre lines of North avenue, Townsend street, Durham street, and Register street,)'' and the deed conveys the property

thus described to the grantee "subject however to the lease to Tucker dated March 20th, 1888."

We have thus traced the title to this property down to the appellant, giving the clauses of each conveyance bearing upon the question before us. It was also shown by parol proof that at the time of the sale by Malcolm and Talbott, and down to the time when the city opened North avenue from Greenmount avenue to Belair avenue, under an ordinance passed on the 8th day of November, 1873, the mansion house and the six acres attached thereto were continually occupied as a country residence; that the ground so occupied in connection with the house was enclosed by a fence; that neither Ann street, Argyle alley, North avenue, nor any other street or alley laid down on the plat made by Malcolm and Talbott, was at the time of the sale, or the date of the deed to Boyd, actually opened on the ground or used as a highway or road through the property so sold by them; that the ground so within said enclosure was used partly for lawn and garden purposes, partly for pasture, and access to the house was by means of a lane or road not occupying the bed of any street or lane laid down on said plat; that as late as the 5th of June, 1889, only three days before the passage of the ordinances for their opening, no part of Ann street or of Register street, proposed to be opened by the proceedings in these cases, was actually opened or used as highways or roads; and that the ground in the beds of said streets was in such condition that it could not be used as a road or highway until graded.

We have carefully considered the terms of the advertisement of sale made in 1853, with those of all the subsequent conveyances, and, as we construe them, they not only fail to prove an intent on the part of the several owners to dedicate the beds of these streets to public use, but clearly show a contrary intent. They, all

of them, seem to have been carefully prepared and drawn for the very purpose of avoiding and preventing such dedication. The implication of a grant or covenant to that effect is thoroughly repelled. We are therefore clearly of opinion there was no dedication effected by these conveyances.

But it is said that, though there may have been no dedication of the beds of these streets to *public use,* yet under the lease of March 20th, 1888, the lessee and his assigns acquired *easements* in the beds of these streets, and became entitled to the use thereof for the use and benefit of the lots fronting or binding thereon, and the appellant therefore can only recover such damages as the jury may find he will sustain by the condemnation of these streets as public highways, taking into consideration the fact that he holds the beds of said streets subject to said easements. The Court below adopted this view by granting the appellee's eighth prayer to that effect, and the result was that the jury gave a verdict for nominal damages only.

The granting of this prayer involves the proposition that, though both lessors and lessee *expressly agreed* by the lease, that the reference to the streets in describing the boundaries of the several lots, was made "for the purpose of location and description merely," yet by such reference and description the lessors have granted, and the lessee has acquired, *perpetual* easements over them in favor of the lots, which amounts practically to the same thing, so far as the owners of the beds of them are concerned, as if they had been dedicated to public use. We think it clear it was not the intention of the parties to this instrument to create any such easements, and it is very doubtful, to say the least, whether its legal construction involves the grant of any easement whatever in favor of these lots. If any was thereby granted, it was one of a *temporary character* merely, or the right to

use the streets until they were condemned, and opened as public highways. It was evidently the purpose of the lessors as well as the lessee to secure to the former full and substantial compensation for the beds of the streets, whenever they should be thus condemned and opened. It is a material part of the lease, and we cannot strike the clause down by sustaining the position now taken by the city. In none of the many cases of street openings that have come before this Court has this proposition been asserted, though in several of them the facts, as here, would have allowed its presentation. Indeed, the strong language used by the Court in *McCormick, et al. vs. Mayor, &c. of Baltimore,* and in *Mayor, &c. of Baltimore vs. White and Shipley,* would seem to be conclusive of the question. In the former the Court said: "a party should not be deprived of his property without compensation, unless there has been some clear and decisive act of dedication;" and in the latter there was an express covenant in the deed of partition that the "parties, and all others claiming under them, shall have free ingress and egress through any and all of the streets and alleys laid down on Poppleton's Plat of Baltimore, which run through the land hereby conveyed," and the Court held that the right reserved by that covenant "was simply intended *to cover the interval,* which might be a very long one, until the streets should be actually opened through this property by the city authorities," and, when the streets were thus opened, the owners of the beds of them were entitled to full and just compensation for the same. In *Allen vs. City of Boston,* 137 *Mass.,* 319, specially relied on by counsel for the appellees, the land was conveyed by a deed executed in 1822 to the grantee under whom the petitioners claimed title, and that deed contained a provision or restriction to the effect that no building, except of a particular character and devoted to a particular use, should ever be erected

on the property thereby conveyed. The Court instructed the jury that in their estimation of the fair market value of the whole estate, they might take into account the effect, if any, of this provision in that deed, as tending to throw a cloud upon the title, which might diminish the fair market value of the estate proposed to be taken for the street opening. In that case, as we understand it, the Court held that this restriction was permanent in its character, and was still binding upon any part of the estate not taken for the street. We can well understand how a restriction of this character, which clouds the title, or a permanent easement which diminishes the market value of the property, may be taken into consideration in such cases. But that is not the case before us. Here the easement, if any existed, was, as we have said, of a temporary character, to continue only until the streets were opened when it would be superseded and extinguished. In fact it is obvious from the face of the lease itself that the parties to it, lessee as well as lessors, contemplated when they executed it, that ordinances for the opening of these streets would soon be passed. There is no proof that the lessee ever sold any of these building lots or ever erected any buildings upon them. The proof shows moreover that the beds of these streets were in such condition that the supposed easements would have been of no value to any such building. In our opinion, therefore, there was error in granting this eighth prayer.

The Court also granted a prayer of the appellees to the effect that the whole bed of Argyle alley *south* of the six acre lot, to Townsend street, was dedicated, and the appellant can therefore recover only nominal damages for that part of this alley, now Register street. This prayer is founded upon a different state of facts and a different deed. It appears from the record that the trustees, Malcolm and Talbott, sold another part of this

same estate to Alexander B. Ellis, and conveyed it to him by deed dated the 23rd of April, 1856. In that deed the property is described in part as " beginning for the same on the south side of North avenue at the distance of eighty-two feet easterly from the corner formed by the intersection of the south side of said avenue and the east side of Broadway, and running thence easterly bounding on said avenue one hundred and seventy-five feet to Argyle alley; *thence southerly bounding on said alley* two hundred feet to a twenty foot alley extending from Broadway to Ann street, embracing the seven lots numbered from four to ten, inclusive, in section twenty-nine, as designated and distinguished on the sale plat, aforesaid.'' In the advertisement of this part of the property there is no such reference to the *beds of streets* as that contained in the advertisement of the six acre lot, nor does the deed make any reference thereto. The sale to Ellis was made at public auction, under the advertisement and sale plat, and the deed to him was executed more than eighteen months before that to Boyd. We find nothing in the record to prevent this deed, on the doctrine of an implied grant or covenant, from effecting the dedication contended for. No intention of the parties to it, to the contrary, is discoverable. The subsequent deed to Boyd, so far as it conveys property outside of the six acre lot, can have no effect in preventing such dedication, because no *subsequent* act of the common grantors of both Ellis and Boyd could revoke such prior dedication. That the dedication extends from the limits of the six acre lot south to Townsend street is, we think, conclusively settled by the decision in *Tinges vs. Mayor, &c. of Baltimore,* 51 *Md.,* 600. We therefore find no error in the granting of this prayer, nor in the rejection of the appellant's first prayer in the Register street case,

It results from what we have said that there was error in granting the appellee's eighth prayer, and in reject-

ing the appellant's first prayer in the Ann street case. No exception was taken to the rulings of the Court upon the other prayers, and they are not before us for review.

*Judgments reversed, and*
*new trials awarded.*

(Decided 16th January, 1891.)