# THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* LOUISA M. BROUMEL.

*Dedication of Streets—Acceptance of Street by Municipal Authorities —Act of 1888, Chap. 98, Annexing Part of Baltimore County to Baltimore City—Unaccepted Dedication of Streets in the Annexed District—Powers of City Commissioner—Injunction.*

Where the owner of a tract of land makes a map of it designating lots and streets thereon and sells lots binding on the streets, such dedication does not make the streets public thoroughfares until an acceptance of the same by the municipality.

Such acceptance may be shown by deed or other record, or by acts *in pais* such as opening, grading or keeping the road in repair at the public expense, or by long continued user on the part of the public.

The owner of land then situated in Baltimore County made a plat of the same upon which certain streets and avenues were projected. Some of the lots designated on the map were sold and plaintiff became the owner of two of them and of a house erected thereon. There was no marks to indicate where the projected streets ran and the whole property was enclosed by fences. Plaintiff's house was built partly upon one of the projected streets. The county authorities never accepted this street in any manner nor was the same used by the public. Fourteen years afterwards this part of the county was annexed to Baltimore City and the city acquired jurisdiction, under the Annexation Act, over such streets in the annexed territory as had been condemned, conveyed or dedicated. The City Commissioner notified plaintiff that her house stood in the bed of a street designated as such on said map and ordered its removal. Upon a bill for an injunction, *Held,*

1st. That assuming that the map and the sale of lots worked a dedication of the streets marked thereon, yet the dedication had never been accepted by the county authorities, and the Annexation Act did not convert an unaccepted dedication of a street into an accepted dedition, making the same a public street to be maintained by the city.

2nd. That in the absence of any municipal ordinance authorizing the same, the City Commissioner had no power to accept a dedication, and the execution of his threat to remove plaintiff's house should be enjoined.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), granting an injunction.

The case was argued before McSherry, C. J., Bryan, Fowler, Page and Boyd, JJ.

*Edward N. Rich* (with whom were *Thos. Ireland Elliott, City Solicitor,* and *William S. Byran, Jr.,* on the brief), for the appellant.

The appellant will contend :    1. That there has been a *complete dedication* to the *public* of the land in the bed of Chestnut or Elgin avenue.    *McCormick* v. *Mayor and City Council of Baltimore,* 45 Md. 524-5 ; *Kennedy* v. *Mayor and City Council of Cumberland,* 65 Md. 520-1 ; *Pitts* v. *Mayor and City Council of Baltimore,* 73 Md. 332-3 ; *Frick ats. Mayor and City Council of Baltimore,* 82 Md. 83.

II. That *the fact of dedication* being established, it was not necessary that *acceptance* had been made either by the *public,* or by the Mayor and City Council of Baltimore. *McCormick* v. *Mayor and City Council of Baltimore,* 45 Md. 523-4 ; *Mayor and City Council of Baltimore* v. *Frick,* 82 Md. 86-7 ; *Elliott on Roads and Streets,* page 669.

III. That *acceptance not being necessary,* even if there were no acceptance, the appellee acquired no right in the land dedicated which would authorize her to bring the present suit.    *Van Witsen* v. *Gutman,* 79 Md. 409 ; *Ulman* v. *Charles Street Avenue Co.,* 83 Md. 114.

IV. That this case does not involve the question of the liability of the Mayor and City Council of Baltimore for the maintenance of Chestnut or Elgin avenue, because until *opened for public travel* no responsibility attaches.    *Mayor and City Council of Baltimore* v. *Brannan,* 14 Md. 237 ; *State use of James* v. *Kent Co.,* 83 Md. 381-2 ; *Bartlett* v. *Bangor,* 67 Maine, 460.    2 *Dill, Munp. Corporations,* sections 1008, 1016.

V. That having erected her buildings in the public right of way, the appellee took all the risks, and is entitled to *no* relief.    *Ulman* v. *Charles Street Avenue Co.,* 83 Md. 144.

VI. That the City Commissioner, in view of the dedication, had the right, even in advance of an actual opening of

Chestnut avenue, to require the appellee to remove her buildings out of the public right of way, and that whether he had or had not, the appellee could not invoke the aid of a Court of Equity in doing what she had no right to do. *Ulman* v. *Charles Street Avenue Co.*, 83 Md. 144. Maintaining her house in the bed of Chestnut avenue is a *nuisance*. Any person can abate a nuisance—public or private—if it can be done without a breach of the peace. *Day* v. *Day*, 4 Md. 270; *Harvey* v. *Dewoody*, 18 Arkansas, 258–9.

*Isidor Rayner* (with whom was *Wm. B. Rayner* on the brief), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court of Baltimore City perpetually enjoining and restraining the Mayor and City Council of Baltimore from tearing down and removing the dwelling house and other buildings of the appellee. The house and buildings are situated, it is claimed, on the bed of Chestnut avenue, which the appellant insists was dedicated to the public in 1874 whilst the locality formed part of Baltimore County and before it was brought within the limits of the city by the Act of 1888, ch. 98. A considerable tract of land belonging to the Chesapeake Mutual Land and Building Association was in 1874 or thereabouts decreed to be sold at the suit of creditors of the association, and receivers were appointed to make the sale. They had an extensive plat prepared upon which streets and avenues were drawn or projected and named, and this plat was filed in the equity case in Baltimore City along with the report of sales. The land was suburban property lying in one body beyond the limits of the city without any streets, lanes or avenues actually laid out through or upon it. Adjoining this tract on the east was other arable land owned by other persons. Chestnut avenue appears from the plat to be a short *cul de sac* running at right angles from what is called Tenth street, eastwardly until it reaches

the boundary line between the Building Association property
and the contiguous property owned by other parties where
it abruptly terminates.    Even as projected on the plat it
had but one open terminus.    Two of the lots into which
the whole tract had been subdivided were sold by the re-
ceivers to James Broumel in 1878, and he subsequently
leased them to one Lewis Robinson, who proceeded to con-
struct a dwelling house thereon in 1884.    There were no
stakes, furrows or marks of any description to indicate where
this so-called Chestnut avenue and this alleged Tenth street·
were located, nor was there anything on the ground to sug-
gest that any streets were established or designated to be
opened there at all.    Mr. Robinson was entirely ignorant
of the existence of these or any other contemplated streets
in the vicinity of the lots leased by him.    These lots, includ-
ing what is now said to be the bed of Chestnut avenue, were
surrounded by a fence.    He selected within this enclosure
a site for his house, partially built it and then surrendered
the lease to Broumel, who completed the buildings after-
wards.    Broumel then died and this house and the other
buildings were allotted to his widow as her dower, and she
has lived in and occupied them ever since.    It now turns
out or at least it is now contended in behalf of the city, that
this dwelling house and these other buildings are located in
part upon the bed of this Chestnut avenne.    The lots and
the bed of the avenue continued to be enclosed during the
whole period of time that the land formed part of Baltimore
County as well as after its annexation to the city.    From
1884 down to 1896, the house has been occupied by the
appellee without molestation, and it was not until August
the seventeenth, 1896, that any claim was ever made that
such an avenue existed, nor was it pretended till then that
the appellee's house stood upon the bed of that avenue.    On
the day of the date just named the City Commissioner gave
the appellee notice to remove her dwelling house and other
buildings from the bed of Chestnut avenue " as promptly as
possible, as the bed of Chestnut or Elgin avenue at this

point is the property of the city." The notice informed the appellee further that unless she promptly complied her buildings would be taken down at her expense by the City Commissioner.

There is no pretence that Baltimore County or the city of Baltimore ever acquired title to Chestnut avenue by condemnation proceedings or by purchase. If the city owns the bed of this avenue at all, it owns it by virtue of a dedication made in 1874 to Baltimore County by the receivers who sold the building association's property whilst that property was still within the limits of Baltimore County. If a dedication was really made in 1874 it was not a dedication to Baltimore City, and if there was no *acceptance* by the Baltimore County authorities and if before the annexation of the territory to Baltimore City the dedication was revoked or the dedicated street was actually abandoned and adverse private rights intervened, then the subsequent extension of the city's limits beyond this particular locality gave to the city no right to assert an ownership by the antecedent dedication. It is not even suggested that the Baltimore County authorities ever accepted the alleged dedication so as to fix the right of the public in this avenue ; and it is difficult to see why there should have been an acceptance of a dedication when the thing dedicated was a mere *cul de sac.* Assuming, though it is by no means conceded, that this plat filed in an equity case in Baltimore City worked, under the circumstances stated, a dedication of public streets which would have been situated in Baltimore County had they been opened prior to 1888 (*Lippincott et al.* v. *Harvey, 72 Md.* 572) ; still so long as the jurisdiction of the county authorities extended over the property there is not only not the slightest intimation that there was an acceptance of the dedication but all the surroundings strongly indicate a refusal to accept. It is perfectly well settled in this State that a mere dedication is not, of itself, sufficient to establish a highway which the local authorities are bound to deal with as a thoroughfare. The owner of land cannot by merely making

a plat of it and designating streets thereon, force the public· authorities to assume control over it as a highway.   If he could do so he might subject the county or the city to intolerable burdens and compel the construction and maintenance of expensive roads which the public convenience did not require.    In addition to a dedication there must be an acceptance by competent authority, and such an acceptance may ordinarily be evidenced in one of three ways, viz., by deed or other record ; by acts, *in pais*, such as opening, grading or keeping the road in repair at the public expense; or by long continued user on the part of the public.   *State use of James* v. *Kent Co.*, 83 Md. 377.   The local law of Baltimore County—the Act of 1882, ch. 49, sec. 211, Art. 3, Local Code—restricts the county authorities to the first mode of acceptance and this statute was in force for six years prior to the city's acquisition of jurisdiction over the territory which includes this Chestnut avenue.   No deed to the County Commissioners for this *cul de sac* has been exhibited or is alleged to exist.   Neither Chestnut avenue nor Tenth street was actually opened or even located or staked off on the ground, and the former has been continuously inclosed by a fence.   There are no acts *in pais* shown to have been done by the County Commissioners prior to the adoption of the Act of 1882 from which an acceptance by them can be inferred, and not only has there not been a long and continuous user by the public, but in fact there has been no user by the public at all.   There is consequently not a shred of evidence to show that whilst the land formed part of Baltimore County there ever was an acceptance of this Chestnut avenue as a highway.   But more than that ; during the whole of the fourteen years which elapsed between the alleged dedication and the annexation in 1888, acts were done by the owners of these lots now owned by the appellee, and were suffered by the county authorities, which if not wholly incompatible with the theory of acceptance, are at least strongly indicative of an unconditional abandonment of any claim by the public to this *cul de sac* as a highway.

There being, then, no acceptance by the Baltimore County authorities, did the city by the Annexation Act of 1888 or the supplement of 1890, ch. 628, acquire any right to the avenue ; or did the avenue become "the property of the city" as the City Commissioner claims ?    If these Acts of Assembly do not amount to or constitute legislative acceptances on behalf of the city, then there has, confessedly, been no acceptance by the city of the alleged dedication, unless the City Commissioner is clothed with power to accept for the city, and has validly exercised that power in this instance. The Acts of 1888 and 1890 merely extended the jurisdiction of the city over such streets in the annexed territory as had been conveyed, condemned or dedicated.    Those Acts did not convert, nor were they designed to convert unaccepted dedications into accepted dedications ; nor did they sweep away or abrogate private rights acquired by means of an abandonment of a mere street on paper, unopened, unlocated and undesignated.    The city took the annexed territory just as it found it.    If there were dedicated streets unaccepted in any way, they did not become public thoroughfares merely by being brought within the city limits. No ordinance has been adopted by the City Council accepting Chestnut avenue, nor has any other act been done by the municipality from which an acceptance can be implied. The City Commissioner possessed no authority to bind the city by an acceptance, and even if he undertook to formally accept, his act would be a mere usurpation of power and would be utterly nugatory and ineffective.

It is perfectly true as decided in *Frick's case*, 82 Md. 83, that a dedication may be complete without acceptance, and that in the absence of any condition there need be no user within a particular period ; but however complete the *dedication* may be as against the party making it, the road or street so dedicated does not become a public thoroughfare over which the public authorities may exert ownership or control, or which they can be compelled to keep in repair until they have seen fit to accept it.    Nor will mere lapse

of time, without more, be sufficient evidence of abandonment. A street once dedicated may be abandoned or it may never be accepted. If there ever was a dedication of this *cul de sac* it most certainly never has been accepted. The city of Baltimore does not, therefore, own this alleged avenue, and the City Commissioner was entirely without authority to interfere with the buildings of the appellee. His. threat to remove those buildings was a threat to do, in the name and on behalf of the municipality, an unlawful and *ultra vires* act which a Court of Equity had the undoubted right to prevent. If the public convenience requires that this Chest-· nut avenue should be opened, it must be opened pursuant. to and not in defiance of law. Most assuredly private property cannot be ruthlessly taken from its owner by the strong hand of force under a pretext that the buildings are located on a dedicated highway without an opportunity being given to the owner to be heard in some duly constituted legal tribunal.

Satisfied as we are by the record that the City Commissioner's contemplated proceedings were utterly unlawful and without a shadow of justification, we shall affirm the decree·· appealed from.

> *Decree affirmed with costs above and below.*

(Decided June 23rd, 1897).