## LOUISA M. BROUMEL *vs.* FRANCIS WHITE.

*Dedication—Compensation for Improvements—House Built by Mistake in Dedicated Street.*

When a deed conveying land describes it as binding on an unopened street owned by the grantor and designated as such on a map made by him, there is a dedication of the street to the public.

When a party acting in good faith makes a mistake as to the boundaries of his land and erects improvements upon land which he does not own, he is entitled to compensation for the improvements when the true owner asks the aid of a Court of Equity to recover possession of the land.

Defendant, the owner of certain lots of ground bounded on one side by an unopened street which had been dedicated to the public by the former owner by a plat made at the time of sale, built his house partly on said street. There were no marks to indicate where the projected street ran and the house was erected under a *bona fide* mistake as to the ownership of the land. It was also doubtful whether the street was dedicated in law. Several years afterwards a party who owned land bounding upon the same dedicated street and who had made no objection to the erection of the house, filed a bill asking for a mandatory injunction directing the removal of the house from the bed of the street. *Held,* that the defendant is entitled to be paid the fair value of the building before the same can be removed, whenever the street shall be opened.

Appeal from a *pro forma* decree of the Circuit Court of Baltimore City.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and PEARCE, JJ. (Feb. 9 and 10, 1898).

*Isidor Rayner* and *Richard H. Worthington,* for the appellant.

*William S. Bryan, Jr.,* and *Wm. Sherman Bansemer* (with whom was *Edward N. Rich* on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

The bill in this case was filed by Francis White, the appellee, for an injunction to restrain the appellant, Louisa M. Broumel, from *maintaining* her dwelling and other houses on what is alleged to be the bed of Chestnut street, and a mandatory injunction is prayed requiring the appellee to *remove* said buildings from the bed of said street.

The ground upon which the appellee places this application for the exercise of this extraordinary power of a Court of Equity, is that Chestnut street nearly twenty years ago was dedicated to the public as a street or highway. The answer denies that there ever was any intention to dedicate as a public street what is claimed to be the bed of Chestnut . street, and that if there ever was any such dedication it was long ago abandoned by all parties having any interest in the adjoining land or any right to the use of the way so claimed to have been dedicated. The Court below decreed *pro forma* that Chestnut street or avenue is dedicated to the public as a street; that the appellant should no longer maintain her dwellings now in the bed of said street, and that she should remove them at her own cost within sixty days from the date of the decree.

In the case of Mayor and City Council of Baltimore against this same appellant decided at last April Term, 86 Md. 153, we held that if there ever was a dedication of this *cul de sac* (Chestnut avenue) it most certainly has never been accepted and that "the city of Baltimore does not, therefore, own this alleged avenue, and was without authority to interfere with the buildings thereon." In concluding the opinion in the case just referred to we said: "If the public convenience requires that this avenue should be opened, it must be opened pursuant to and not in defiance of law. Most assuredly private property cannot be ruthlessly taken from its owner by the strong hand of force under a pretext that the buildings are located on a dedicated highway without an opportunity being given to the owner to be heard in some duly constituted tribunal."

Subsequent to the filing of the opinion just cited, the appellant filed the bill in this case, and by agreement all testimony and exhibits in the former case are to be considered as evidence in this, and the only additional testimony before us now relating to dedication is that of the appellee.

The controlling question, therefore, is whether Chestnut avenue was dedicated, as claimed by the appellee, and if so, what are the rights of the appellant? The general principle that a dedication of private property to public use must be established by clear, satisfactory and cogent proof is so well settled in this State that any citation of authorities is unnecessary. Do the facts here relied on satisfy the requirements of this rule? In 1878 certain receivers appointed by the Circuit Court of Baltimore City were authorized by that Court to sell a tract of land in Baltimore County. The receivers prepared a sale's plat of the land on which a number of streets, among them Chestnut avenue, was laid out, and the lots appear to have been sold, and some of them conveyed as designated on the plat. The appellee purchased at the receivers' sale a number of lots abutting on the north side of the alleged street; at the same sale the appellant purchased several lots abutting on the south side of said street immediately opposite those purchased by the appellee. In the deed from the receivers to the appellee the lots purchased by him are described as one tract, running southerly " to the north side of Chestnut avenue, thence east on the north side of Chestnut avenue, one hundred and fifty feet to the west side of an alley twenty feet wide." In the deed from the receivers to James Broumel, under whom the appellant claims the land now owned by her, is described as certain lots designated on the plat, on which, as we have said, Chestnut avenue is laid out as a street. The plat in question was used at the sale of the lots, was filed in the cause in which the decree was passed authorizing the sale at which both the appellant and appellee's predecessors in title purchased. Under these circumstances we think it may fairly be said there was a

dedication under the rule established by all the authorities in this State from *White* v. *Flannigan*, 1 Md. 540, down to the present time, namely, "where an owner lays off land in lots and sells them as bounding on certain streets, which are sufficiently designated, the streets so called for are held as dedicated to the public." The presumption of dedication arising from selling and conveying lots binding on streets located on maps or plats prepared by the vendor, may be rebutted in various ways. But there is nothing shown in this case by which the legal presumption can be rebutted. In the case of *Lippincott* v. *Harvey*, 72 Md. 578, the whole reliance to establish dedication was based upon a plat which was held to be too indefinite to constitute evidence of dedication. Nor were there in that case, as there are in this, conveyances to both parties, clearly calling for the street. And in addition to this the map or plat here is free from any ambiguity whatever. In the cases in which we have held that the general rule does not apply, we have always found something in the deed or lease clearly showing there was no intention of the grantor or lessor to make a dedication to the public. *Glenn's case*, 67 Md. 390; *McCormick's case*, 45 Md. 512; *Pitt's case*, 73 Md. 326; *Fear's case*, 82 Md. 254, and others not necessary now to cite. Nor can there be any contention here that there is anything in the deeds in this case to prevent them from working a dedication, because, as in the cases cited, a contrary intention is expressed upon the face of the instrument.

Without undertaking to discuss all of the positions taken by the appellant, we will confine our attention to the discussion of the one in which we think the strength of her case lies, viz., that she is a *bona fide* possessor, and that therefore the improvements on the bed of Chestnut avenue cannot be taken without compensation. We have said in the former case that it would be the greatest injustice to allow the city without compensation to the appellant to destroy her dwellings and other buildings on the bed of Chestnut avenue. And under the peculiar circumstances

of this case we think it would be equally contrary to the plainest principles of equity that the appellee or the public should be authorized to do what the city has been prohibited from doing. It is true, as we have said, the facts which we have found to exist in this case compel us to hold that there was a dedication in law ; but it does not follow that because there was such a dedication, the appellant must be deprived of the value of the improvements and buildings she owns on the bed of the dedicated street. If she or those under whom she claims did in good faith, and without actual notice from the appellee or others who like him claim a right of way over Chestnut avenue, make the improvements in question on the bed of the paper street with nothing on the ground to indicate there was a street intended to be there, we think that before he or the public can come into a Court of Equity asking for the relief prayed for they must offer to "do equity," namely, pay or offer to pay the damages which will result to the appellant by the removal of her buildings.

In this case there can be no question as to the *bona fides* of Robinson who built the house in the bed of the street. He testifies that he never had any intimation that there was any street or avenue on the property and that there was nothing to indicate that there was any proposed road or street there. The appellee saw him building, never made any claim to the street, and offered to lease him land north of the fence which then enclosed the appellant's lot, including part of Chestnut avenue. Broumel, from whom Robinson purchased, purchased at the receivers' sale, and afterwards purchased from Robinson, having previously sold the property to him, but there is nothing to show that he had any other notice of a dedication except that which is furnished by the plat and the reference to it in his deed. If knowing these facts, he made a mistake and drew an incorrect legal inference from them, and believed that the house was on his own land, when it was on a dedicated street, a Court of Equity will not allow him or his wife who claims

under him to be impoverished by reason of such mistake of law, nor the appellee nor the public to be the gainers thereby. "*Nemo debet locupletari ex alterius incommodo.*" Under the peculiar facts of this case, and presenting as it does a strong appeal to the protecting power of a Court of Equity, we cannot see why the well-settled doctrine applied in the case of *McLaughlin* v. *Barnum*, 31 Md. 453, should not be equally applicable here. In that case the appellant, McLaughlin, purchased valuable property in Baltimore City, and made extensive improvements thereon at great expense. It was subsequently decided that his title, which depended upon the proper construction of the will of David Barnum, .was not good. " He had knowledge," the Court said, "of the will and the law imputed to him knowledge also of its true construction, in so far as to prevent his relying upon estoppel or the plea of *bona fide* purchaser without notice to *defeat* a recovery by the complainants, but the fact that a party cannot successfully maintain such a defence in bar of a recovery upon title, will not deprive him of any equity he may have for an allowance for improvements ; and especially not in a case where relief is sought against him as a defendant in a Court of Equity * * *. In such a case a Court of Equity enforces * * · * the cherished maxim of equity jurisprudence that he who seeks equity· must do equity." It seems to us that it would be the greatest injustice to allow the appellee and adjoining owners of lots, who in case of the opening of Chestnut avenue, would otherwise be called on to pay the value of the appellant's improvements, to escape from all liability therefor because and only because such improvements were placed on the bed of a dedicated street by reason of the fact that the builder drew an erroneous inference of law from the plat and deeds. At most it was at that time a doubtful question as to whether from the facts known or which could have been known there was or was not a dedication. It was said by MAULE, J., in *Martindale* v. *Falkner*, 2 C. B. 719, that " There is no presumption in this country that every person

knows the law; it would be contrary to common sense and reason if it were so." In *Lammot* v. *Bowly,* 6 H. & J. 525, the Court said : " It is not intended to say that the plea *ignorantia legis* would in all instances be available in civil cases (in criminal it never can be) because some legal propositions are so plain and familiar, even to ordinary minds, that it would be doing violence to probability to impute ignorance in such cases ; but it is only meant to say that where the legal principle is confessedly doubtful, and one about which ignorance may well be supposed to exist, a person acting under misapprehension of the law in such a case shall not forfeit any of his legal rights, by reason of such mistake." See also the excellent notes of Mr. Brantly and his collection of authorities on the subject of " Mistake of Law," in the notes to the case of *M. & C. C. of Baltimore* v. *Lefferman,* 4 Gill, 330. In *McLaughlin* v. *Barnum, supra,* the definition of a *bona fide* possessor or occupant as laid down by the Supreme Court in the United States in *Green* v. *Biddle,* 8 Wheat. 79, is quoted and approved. It is as follows : " One who not only supposes himself to be the true proprietor of the land, but who is ignorant that his title is contested by some other person claiming a better right to it." As we have already seen, the evidence before us places beyond doubt the character in which the successive owners of the buildings appear. They are, according to the definition adopted in *McLaughlin* v. *Barnum,* from Robinson, who built the houses in question, down to Mrs. Broumel, the present owner, *bona fide* possessors, and as such are entitled to the protection of a Court of Equity.

But a Court of Equity will sometimes grant relief where there is a mutual mistake of fact. In the case of *McKelway* v. *Armour,* 2 Stockton's Chancery Reps. , 115, also cited in *McLaughlin* v. *Barnum,* a bill was filed " to relieve the complainant from the embarrassment of having erected a valuable dwelling house by mistake, on the land of the defendant Armour." There, as may be conceded is the case here, there was a mutual mistake. " It is proved," says the

Chancellor, " beyond all doubt that the complainant erected his improvements on this lot by mistake ; he supposed that it was the lot next, that belonged to Armour. Armour labored under the same mistake. He lived in the vicinity ; he saw the complainant progressing from day to day with these improvements. If he knew this to be his lot, his silence was fraud upon the complainant, but this is not pre-. tended. He admits that he did not suspect the erections to be on his lot, until some time after their erection, when by actual measurement, to his surprise, he discovered the mistake." The conclusion of the Court was that it would be most unjust to permit Armour to take the improvements, and accordingly, full relief was decreed in favor of the complainant. In our opinion it would, under the circumstances of this case, be equally unjust to allow the appellee or the public to place upon the appellant the whole loss, which upon the most favorable view of the case for the appellee resulted from a common mistake.

We hold, therefore, that while the facts of the case show a dedication of the bed of Chestnut street or avenue as designated on the plat and referred to in the deeds to both the appellant and appellee, yet the appellant is entitled, whenever hereafter Chestnut street or avenue shall be opened, to such compensation as shall be ascertained to be the fair market value of her buildings in the bed of the street.

*Decree reversed with costs to appellant and cause remanded.*

(Decided April 1st, 1898).