**MAYOR AND CITY COUNCIL OF BALTIMORE v. UNITED STATES.**

No. 5318.

Circuit Court of Appeals, Fourth Circuit.

Feb. 9, 1945.

Allen A. Davis, of Baltimore, Md. (Simon E. Sobeloff, City Sol., of Baltimore, Md., on the brief), for appellant.

Roger P. Marquis, Atty., Department of Justice, of Washington, D. C. (J. Edward Williams, Acting Head, Lands Division, of Washington, D. C., Wilmer H. Driver, Sp. Asst. to the Atty. Gen., and Vernon L. Wilkinson, Atty., Department of Justice of Washington, D. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The District Court, sitting by consent of the parties without a jury in a condemnation proceeding, awarded the City of Baltimore $1 as full and just compensation for the taking by the United States of the City's interest in one and a half acres of land on which were located public alleys in a real estate development in the City known as Fairfield, and taken by the United States for use as a shipyard for the building of ships. The City appealed on the ground that for all practical purposes it owned the land in the bed of the alleys and was entitled to the market value thereof in the sum of $5,432 less $1 for the value of the naked fee owned by the abutting owners.

The situation confronting the Judge is described in the following passage from his carefully considered opinion:

"Numerous private lot owners were affected by this proceeding. They have either settled their claims with the Government for their respective interests taken, or have litigated their claims and been awarded compensation after jury trials in this Court. The Mayor and City Council of Baltimore were also made defendants in this proceeding because of the ownership by the municipality of certain public alleys running through parts of the land condemned, which was laid out some years ago as a residential development, intersected by both street and alleys, which were dedicated and accepted by the City. Both the streets and the alleys were, however, merely 'paper' improvements, because never actually laid out, although under the beds of some of the would-be streets, the City had actually constructed some sewer and water lines, and by agreement with the City, no part of the bed of any of the streets was condemned—contrary to what was done with respect to the bed of certain of the alleys. No sewerage or other lines or any improvements had ever been constructed under or upon these alleys. The land constituting the beds of these alleys which are 20 feet wide, has an area of approximately 1½ acres, or, roughly, 67,900 square feet. None of these proposed alleys was ever abandoned by the City. The City has filed an answer to the Government's petition, claiming compensation for this area which has been taken. In the various jury awards made to property owners whose parcels bordered on these proposed alleys as well as upon the proposed streets,

788

the effect of the public easement created by these rights of way was taken into consideration by both the Government and the property owners in presenting, at the trial of the various cases, the values placed by the respective parties upon the parcels of land involved. However, the question of what, if any, compensation the City is entitled to, by virtue of the condemnation of the beds of these alleys, was deferred and heard separately by the Court, by agreement between counsel for the Government and for the City, jury trial being waived."

The alleys had not been graded or paved or improved in any way by the City but they were used to some extent, as abutting owners had built on the back of their lots adjacent to the alleys a number of garages which were poor in character and dilapidated in condition when the land was taken. The contentions of the parties are summarized as follows in the judges opinion: "It is the contention of the Government that these alleys had, at the time of the taking, in and of themselves, no market value—that all their value has gone into the abutting lots, and that, therefore, the City is entitled to recover for the taking of these alleys no more than nominal damages. On the other hand, the City claims that at the time of the taking, the owners of the abutting lots possessed, according to Maryland law, only what is called a naked fee, whereas the City possessed the entire beneficial use of the land embraced in the alleys; that the lot-owners suffered no pecuniary damages by the taking, whereas the City has lost pecuniarily the value of the land embraced in the beds of these alleys; that it has lost not only its highway rights therein but also its right to lay sewer and water pipes and other sub-surface or surface structures therein or thereon; that if· and when the general area embraced in this condemnation proceeding is devoted to either private industrial or residential purposes, the City will be called upon to provide and maintain such structures, and will be required to pay the then owners of the land for re-acquisition of the right to do so; ·and that, therefore, since just compensation for the taking of private property for a public use must be the full and perfect equivalent of the property taken, so that the owner shall be put in as good a position pecuniarily as he would have occupied if his property had not been taken, the City is entitled to be paid the fair market value at the time of

the taking of these alleys which, according to the Government real estate expert who testified and the fairness of whose testimony, on a purely appraisal basis, is not questioned by the Government, is 8¢ per square foot, or the sum of $5,432."

We are in accord with the District Judge in his conclusion that the contention of the City should not be sustained, for it is based upon the thesis that the City is entitled to the same compensation as the owner of unencumbered land would be entitled to receive for the taking of his property by condemnation. The nature of the interest owned by the municipality in public streets and alleys, as contrasted with the interest of the abutting owners, has been defined by the courts of Maryland, and the decisions show that the view maintained by the City is. untenable. The interest of the City in public streets and alleys is not for all practical purposes equivalent to a fee. It is true that when land is dedicated to the City for street purposes, the City acquires as trustee for the public not only the easement of passage but also the right to grade and improve the surface, and to lay drains, sewers and pipes for various utilities beneath the surface of the land. But, on the other hand, the person in whom the fee resides, e.g., the abutting owner, retains substantial rights notwithstanding the dedication. He may maintain trespass or ejectment or waste for the invasion of his rights, such as the unauthorized deposit of material or rubbish upon the soil, Murray v. McShane, 52 Md. 217, 36 Am.Rep. 367; Thomas v. Ford, 63 Md. 346, 52 Am.Rep. 513; he may demand compensation for an additional servitude, for example, the erection of telephone poles, Chesapeake & Potomac Telephone Co. v. Mackenzie, 74 Md. 36, 21 A. 690, 28 Am.St.Rep. 219, and he ˙retains riparian rights in adjacent waters even when the public authority acquires an easement for a highway along the shore, Tolchester Beach Improvement Co. v. Boyd, 161 Md. 269, 156 A. 795, 81 A.L.R. 895; see, also, Chesapeake & Potomac Telephone Co. v. Goldsborough, 125 Md. 666, 94 A. 322, Ann. Cas.1917A, 1; Public Service Comm. v. Maryland Gas Transmission Corporation, 162 Md. 298, 159 A. 758; North Beach v. North Chesapeake Beach Land & Improvement Co., 172 Md. 101, 191 A. 71. In other words, the interest of the abutting owner is not a contingent interest but a present subsisting ownership of the fee, subject

only to the easement in favor of the public; and if, for any reason, the easement is abandoned, the entire beneficial interest in the land reverts to him. Libertini v. Schroeder, 149 Md. 484, 496, 132 A. 64; 18 A.L.R. 1010; 70 A.L.R. 565 and cases cited.

■■ These decisions demonstrate that the City is not entitled to compensation as if it were the owner of an unqualified interest in the land. It seems that the precise question in issue in the pending case has not been decided by the Maryland courts but decisions elsewhere point the way. We are not dealing merely with property in which the ownership is divided among a plurality of persons, but rather with property whose use is divided, and the compensation to be paid to any one whose interest is taken must be reckoned by the value of the use to which he is entitled and not by the value which the land, if unencumbered, would have. The question here is the value of the City's right as trustee for the public to use the land for highway purposes, and it does not follow that the City is entitled to the full value of the land even if the value of the interest of the abutting owner may have been reduced to a nominal amount by the dedication of the land to perpetual public use. Nor does it follow that the sum total of the value of the interest of the City and that of the abutting owner must equal the value of the unencumbered land. The fact is that the value of the land in the bed of the highway as land has been diminished by its devotion to a limited purpose.

In a number of cases effect has been given to these views. In Boston Chamber of Commerce v. Boston, 217 U.S. 189, 30 S.Ct. 459, 54 L.Ed. 725, the City condemned for street purposes a parcel of land owned by the Chamber of Commerce over which for years a wharf and dock corporation had had an easement of way, light and air. The two owners united in demanding $60,000 for their interests, which was conceded to be the value of the land as an unrestricted fee; but the court held that the parties had suffered little damage by the change of the existing easement for the benefit of the Wharf Company into an easement for the general public, and limited recovery to the sum of $5,000 to which the parties had agreed as an alternative figure. The court said at page 195 of 217 U.S., at page 460 of 30 S.Ct., 54 L.Ed. 725: " * * * the Constitution does not require a disregard of the mode of ownership,—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is, What has the owner lost? not, What has the taker gained? We regard it as entirely plain that the petitioners were not entitled, as matter of law, to have the damages estimated as if the land was the sole property of one owner, and therefore are not entitled to $60,000 under their agreement."

Again in Matter of City of New York, Public Beach, Borough of Queens, 269 N.Y. 64, 199 N.E. 5, the court showed that there is no necessary relationship between the total reached by adding the value of an easement in land to the value of the servient tenement, on the one hand, and the value of an unencumbered fee on the other. It is not true in such a case, as the City contends here, that the sum of these parts must be equal to the value of the whole. In the cited case the court was discussing the value of the fee in a portion of an ocean beach which was burdened with the right of each owner of a lot in a large tract to use the beach for passage and for bathing and other sports. The court said, 269 N.Y. at pages 68, 69, at page 6 of 199 N.E.: " * * * The city takes the land free from any easements therein. It must pay compensation for what it takes. It must compensate each owner of a dominant tenement for the value of the easement extinguished. Ordinarily, that value would be represented by the difference between the value of the dominant tenement before and after the taking. Matter of City of New York (West 10th St.), 267 N.Y. 212, 196 N.E. 30, 98 A.L.R. 634. It must also compensate the owner of the fee for the value of the fee burdened, as it then was, by servitudes or easements. The sum of those values may at times approximate the value of the unincumbered fee. It may be much less. Indeed, the sum of these values may be only nominal. That is true when the city condemns, for a public street, land which has been used as a private street in which the abutting owners have easements of light, air, and access, and the owner of the fee is not, also, the owner of abutting property. In such case the ownership of the incumbered fee has no substantial

value. It cannot be used for any purpose which will bring to the owner either profit or enjoyment. It is a burden rather than a benefit, and its taking relieves the owner of the burden."

The City of Baltimore made no effort to approach the pending case from this viewpoint and stood firmly upon its contention that it was entitled to compensation as if it had been vested with complete title to the land occupied by the streets. For authority it relied chiefly on the decision in United States v. Benedict, 2 Cir., 280 F. 76, affirmed on other grounds, 261 U.S. 294, 43 S.Ct. 357, 67 L.Ed. 662. That was a condemnation proceeding in which the United States sought to condemn certain land and the adjoining streets in New York City. The trial court awarded to the abutting owner compensation measured by the value of the entire area included in the streets and the abutting property because it found that the land value of the streets was reflected in the value of the land bounding thereon. It appeared that the city had obtained title to the fee in the land in the streets for street purposes and that the streets had not actually been opened. The appellate court reversed, holding that the city was entitled to share in the award in the proportion that the area within the streets bore to the entire tract condemned. The court said that it was wrong to award to the abutting owner all that the land was worth, streets and all, merely because when the streets should be opened the abutting land would be worth the amount of the award. It said that "the government is called upon to make just compensation for things as they are—not as they may be hereafter—and the compensation must flow to those who were actually deprived of what they owned."

It is obvious that in two respects the facts of this case differ from those in the case at bar, and on this account the precedent may seem less persuasive; but, however, that may be, we do not think that the method adopted should be followed in the present case. We think that the District Court was correct in rejecting the expert evidence offered by the City, and accepting the view of the Government's expert that the City's interest in the alleys had only a nominal value. It is true that it is held in condemnation cases in Maryland that abutting property owners are entitled to nominal damages only for their interest in the fee in the streets. Moale v. Mayor, etc., of Baltimore, 5 Md. 314, 61 Am.Dec. 276; see, also, McCormick v. Mayor, etc., of Baltimore, 45 Md. 512; Pitts v. City of Baltimore, 73 Md. 326, 21 A. 52; Mayor, etc., of Baltimore v. Frick, 82 Md. 77, 33 A. 435; Mayor, etc., of Baltimore v. Broumel, 86 Md. 153, 37 A. 648; Broumel v. White, 87 Md. 521, 39 A. 1047; but it is generally recognized that the value of the abutting land has been enhanced by the opening of the streets. It is customary to say that the value of the land in the streets and alleys is "reflected" in the value of the lots, and since this value must be paid for upon condemnation, it cannot be said that the condemner acquires without cost the lands within the lines of the highway. Weight was given to this fact in the pending case for it was conceded that the lots were of greater value because they had access to the alleys and the amounts awarded to the lot owners were greater than they would have been had the alleys not been opened.

It must not be supposed that the City's pecuniary interests are ignored or neglected by this treatment of the situation. When a street is opened in Baltimore the municipal authorities customarily assess the costs involved upon the adjacent property owners on the ground that they have received benefits of equal amount; and the increased value of the lots finds expression in the increased taxable basis on which the City thereafter collects annual taxes from the owners of the property.

We do not suggest that the city's damages upon the condemnation of its interest in a street must always be limited to a nominal amount. Frequently it occurs that the taking of a street causes substantial loss for which the city must be compensated. This happens when the municipality is required to establish and improve another street in place of the one condemned or to relocate underground structures such as water mains or utility pipes. In such cases the measure of compensation is the cost of supplying the substitute, as was held in Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171; United States v. Wheeler Tp., 8 Cir, 66 F.2d 977; Town of Bedford v. United States, 1 Cir., 23 F.2d 453, 56 A.L.R. 360. This measure of damages is accepted because the city's property in the street has no market value, and resort must be made to other data to ascertain the value of what is taken. The owner must be put in

as good position pecuniarily as he would have occupied if his property had not been taken. United States v. Miller, 317 U.S. 369, 373, 374, 63 S.Ct. 276, 87 L.Ed. 336.

In Brown v. United States, supra, where it was necessary to condemn and relocate a portion of a town in order to make place for the construction of a reservoir by the United States, Chief Justice Taft pointed out the propriety of such a measure of damages in these words (263 U.S. 82, 83, 44 S.Ct. 94, 68 L.Ed. 171) : "* * * The usual and ordinary method of condemnation of the lots in the old town, and of the streets and alleys as town property, would be ill adapted to the exigency. It would be hard to fix a proper value of homes in a town thus to be destroyed, without prospect of their owners' finding homes similarly situate on streets in another part of the same town, or in another town near at hand. It would be difficult to place a proper estimate of the value of the streets and alleys to be destroyed and not to be restored in kind. A town is a business center. It is a unit. If three-quarters of it is to be destroyed by appropriating it to an exclusive use like a reservoir, all property owners, both those ousted and those in the remaining quarter, as well as the state, whose subordinate agency of government is the municipality, are injured. A method of compensation by substitution would seem to be the best means of making the parties whole."

In the pending case the City had made no improvements whatsoever to the alleys when they were taken by the United States, but had merely accepted the dedication without any expenditure on its part. The alleys are now closed and there is no need either to reopen them or to relocate them elsewhere. When taken they had no market value and their extinction imposed no obligation upon the City to replace them. It is suggested that the Government's need for the shipyard may cease at the expiration of the war and the land may be returned to private ownership and the City may be obliged to incur expense to lay out new alleys for the use of the residents. This possibility, however, is too speculative to furnish a basis for substantial damages. Value cannot be placed upon a remote possibility. Cameron Development Co. v. United States, 5 Cir., 145 F.2d 209; People of Puerto Rico v. United States, 1 Cir., 132 F.2d 220, certiorari denied 319 U.S. 752, 63 S.Ct. 1165, 87 L.Ed. 1706. The circumstances here furnish no basis for the finding either that any need for the establishment of new alleys under private ownership is likely to occur, or if so, that a new dedication of the land to public use would not be made without expense to the City.

Affirmed.