## UNITED STATES v. PRINCE WILLIAM COUNTY.

District Court, E. D. Virginia.
Dec. 15, 1934.

Sterling Hutcheson, U. S. Atty., of Richmond, Va., and Paul W. Kear, Special Asst. to U. S. Atty., of Norfolk, Va.

Thomas H. Lion, of Manassas, Va., and Raymond M. Hudson and E. Hilton Jackson, both of Washington, D. C., for defendant.

CHESNUT, District Judge.

This is the fifth of a series of cases involving title of the Government to property now constituting the Naval Base at Quantico, Virginia. The suit is a bill in equity to quiet title to the particular lands described in the bill, and to enjoin the prosecution of an ejectment suit heretofore instituted and now pending in the Circuit Court for Prince William County, Virginia, by the defendant in this case, the County of Prince William, against Smedley D. Butler, and others, sued individually but who were custodians of the property for the Government.

The title of the Government originated by the taking, by Presidential Proclamation, of the whole area of about 5,000 acres, under the authority of the Act of Congress of July 1, 1918 (chapter 114, 40 Stat. 724, 738),

which was passed while the Government of the United States was at war with Germany and Austria. The Act, similar in purpose and provisions to numerous other Acts of the same general nature passed during the recent war, authorized the President to take the particular property at Quantico as a Naval Base for the Marine Corps; and authorized the President to determine the just compensation to be paid to the owners. The Act specially provided that the title in fee simple should vest immediately and absolutely in the United States upon the taking. After the determination by the President of just compensation, it was provided that such compensation should be paid immediately if satisfactory to the owners respectively, otherwise seventy-five per cent. of the amount was to be paid at once with leave to the dissatisfied property owners to sue in the Court of Claims or in the United States District Court, for the balance due. The procedure outlined in the Act for the taking of the property was complied with; and after the Presidential Proclamation the Government promptly occupied the property and has constructed thereon large and costly improvements.

About twelve years after the taking by the Government, several of the property owners brought ejectment suits in the State Court against the Custodians of the property and shortly thereafter the Government filed bills in equity to quiet title and enjoin prosecution of the ejectment suits. Four of these cases have been finally decided in favor of the Government. The underlying questions were common to all, with minor variations in facts. The principal opinion of this court was written in the case entitled United States v. McIntosh, 57 F.(2d) 573; Id. (D. C.) 2 F. Supp. 244; Id. (D. C.) 3 F. Supp. 715. Appeals were taken in two of the cases and dismissed because not filed in time ([C. C. A.] 70 F.(2d) 507), and petitions for certiorari asking a review of the whole cases were subsequently denied by the Supreme Court (McIntosh v. U. S., 55 S. Ct. 101, 79 L. Ed. ——, Gilliam v. U. S., 55 S. Ct. 111, 79 L. Ed. ——).

The only material difference between the present case and those which have been heretofore decided are (1) that the lands here involved consist only of several streets, alleys and roads within the area taken, as contrasted with fee simple property in exclusively private ownership, and (2) no compensation was determined or paid by the Government for the property involved in this case. The latter consideration renders un-available to the Government in this case the defense of estoppel, one of the grounds, but not the sole ground, for the decision in the other cases.

The theory of the Executive Department in not fixing compensation for the taking of the streets, alleys and roads, was that the title to the fee in the beds of these streets, alleys and roads, was vested by the general law of the State of Virginia in the owners of the abutting property, and the public easement of access and travel over them was of no ascertainable value. So far as the rights of the present defendant, the County of Prince William, in these highways is concerned, it is also contended by counsel for the Government in this case that the rights, if any, are vested in the State of Virginia rather than in the County; but in the view I take of the case, it is unnecessary to enter upon a discussion of this question of title or ownership between the abutting property owners and the County and the State because, as is correctly pointed out I think, by counsel for the defendant, if the Government is to prevail in this case, it must be upon the strength of its own title and not upon the weakness of the defendant's title. Dick v. Foraker, 155 U. S. 404, 414, 15 S. Ct. 124, 39 L. Ed. 201.

The property here involved is specifically described in the bill of complaint as 27 separate parcels of which the first 25 constitute streets and alleys laid out on a plat of a sub-division of a portion of the land of the Quantico Company, which plat was duly recorded in the Clerk's office of the Circuit Court for Prince William County, Virginia. Lot 26 is described as follows:

"All that strip of land 30 feet wide by 15,000 feet long, more or less, known as the County Road from Quantico, Virginia, to the 'Triangle,' lying in said highway as it runs from Potomac Avenue at Quantico, Virginia, thence northwesterly, thence westerly directly to the point of the intersection of the southeast side of the Richmond and Washington Highway at the 'Triangle.'"

Lot 27 was described as follows:

"All that strip of land 30 feet wide by 13,800 feet long, more or less, known as a part of the Richmond and Washington Highway, lying in said highway as it runs from its point of intersection with the County Road at the 'Triangle,' thence in a westerly and southwesterly direction, as it meanders, to the old bed of Chippawamsic Creek."

Most of the streets and alleys described in parcels 1 to 25, inclusive, were simply pa-

per streets not actually physically laid out or improved as streets or alleys, but some few of them were in actual use. After the Government took possession of the whole area most, if not all, of these streets and alleys were closed to public use except by special permission given, but it does not appear that any public inconvenience has resulted. One of the streets which was used by the public afforded access to a school house and hotel, for which compensation was paid. The County Road (Item 26) and the State Highway (Item 27) were very substantially improved by the Government. The County Road when taken over by the Government was an ordinary dirt road which was improved by the Government at an expenditure of $200,000. Potomac Avenue, which connected with the County Road and gave access to the dock, was improved at a cost of $24,650; and the Government also spent in 1918 and 1919, approximately $150,000 in the improvement of that portion of the Richmond-Washington Highway embraced within the area of the whole land taken. In 1920 the State of Virginia resumed maintenance of that portion of the Highway and it is said a portion of the whole of that section of the Highway has now been relocated. The public generally has continuously had free and uninterrupted use of the County Road and the State Highway in their improved condition.

 The controlling question in the case is simply whether the United States obtained a good title to the property by the Presidential Proclamation pursuant to the Act of Congress and the procedure thereunder. For the reasons stated in the several opinions in the McIntosh Case it is my opinion that the title thereby acquired by the Government was good. The principal contention of the defendant is that the Act is invalid because it could not constitutionally authorize the taking of the property before payment of just compensation as determined by a jury trial. This defense was extensively considered in the prior opinions and need not be further discussed. It is specially emphasized by defendant's counsel in this case that there is a distinction in the law of eminent domain between a taking of possession and the passing of title; and that while under some constitutions possession may be taken by governmental authority prior to the payment of just compensation, nevertheless title cannot validly be made to pass before compensation has been paid or tendered. But this particular point was expressly considered and decided against the defendant in the McIntosh Case (D. C.) 2 F. Supp. 244, 252. The Act (40 Stat. 738) specifically provides "that upon the taking over of said property by the President as aforesaid the title to all property so taken over shall immediately vest in the United States." As the taking here was by the Government directly (and not by a private corporation) the constitutional requirement as to just compensation was gratified if the public faith and credit was pledged to a reasonably prompt ascertainment and payment and there was adequate provision for enforcing the pledge. See cases cited in the McIntosh opinion (2 F. Supp. 244, 252, 253) and also George Moore Ice Cream Co., Inc., v. J. T. Rose, Collector, 289 U. S. 373, 382, 53 S. Ct. 620, 77 L. Ed. 1265; Manufacturers' Co. v. U. S. Corp., 264 U. S. 258, 44 S. Ct. 314, 68 L. Ed. 664; United States v. Stein (D. C.) 48 F.(2d) 626; Richmond F. Co. v. Llewellyn, 156 Va. 258, 280, 157 S. E. 809, 162 S. E. 601; 20 C. J. 844 (note 3). The case of In re Military Training Camp, 260 F. 986, 990 (D. C. E. D. Va.), cited by defendant's counsel as contra, was a proceeding for condemnation under the general statute. The Act in this case, as we have seen, did make adequate provision for the judicial determination of just compensation.

 It may be that in carrying out the Act the better practice would have been for the Executive Department to have affirmatively and specifically determined what, in its opinion, was just compensation to the County or State for the taking of the public easement of user of the streets, alleys and roads so taken. So far as the interests of abutting property owners were concerned, the compensation awarded them included their interests in the beds of the streets, alleys and roads; but theoretically at least, the proper governmental authority for the State of Virginia was entitled to nominal consideration at least, for the interest in the highways taken. See Town of Bedford v. United States, 23 F.(2d) 453, 56 A. L. R. 360 (C. C. A. 1). Counsel for the Government point to the Act of the Virginia Legislature ceding jurisdiction of the area to the Government; but such an Act of cession of jurisdiction is not necessarily to be interpreted of itself as a waiver of compensation for the property taken. As a practical matter it is pointed out by counsel for the Government that what was taken over was a liability rather than an asset and that the Government has conferred a benefit rather than a detriment by improving and maintaining the roads.

It is at least highly persuasive of the view that no substantial property rights were taken without compensation when we find the complaint now made by the defendant in this case was belated to the extent of about twelve years without explanation for the delay, as the defendant in this case offered no testimony on its behalf. But however this may be, we are concerned here fundamentally with the question of title which we find legally passed to the Government upon the taking.

■ After the taking of the property the defendant, if it claimed to be an owner of the property taken, had full opportunity to claim its just compensation. The President's Proclamation was legal notice of the taking and it does not appear that the defendant did not in fact know of the taking. Its failure to press its claim for just compensation was due to its own neglect and did not operate to defeat the title acquired by the Government. It has been so determined in numerous judicial decisions. Kaukauna Water-Power Co. v. Green Bay & Miss. Canal Co., 142 U. S. 254, 279, 12 S. Ct. 173, 35 L. Ed. 1004; United States v. Town of Nahant (C. C. A.) 153 F. 520, 523; Nelson v. Fleming, 56 Ind. 310, 321; Rexford v. Knight, 11 N. Y. 308, 312; Taylor v. Marcy, 25 Ill. 518, 522; Cupp v. Com'rs of Seneca County, 19 Ohio St. 173; 20 C. J. 869.

■ The defendant also contends that the taking was not authorized because the particular property, consisting of streets and roads, was already devoted to a public use, and in such a case property may not be taken for another public use without clear and express authority therefor; and it is said that was lacking in this case. United States v. Certain Land in Town of New Castle (C. C.) 165 F. 783. With respect to a similar contention the Supreme Court, in United States v. Gettysburg Elec. R. Co., 160 U. S. 668, 685, 16 S. Ct. 427, 431, 40 L. Ed. 576, said:

"The defendant in error concedes what is without doubt true, that this is a question of intention simply; the power of congress to take land devoted to one public use for another and a different public use upon making just compensation cannot be disputed."

An examination of the Act of Congress here involved and what was done thereunder shows with sufficient clarity that it was the legislative intention that these streets and alleys here involved should be taken for the governmental purposes. The Act (40 Stat. 724) provided:

"Marine Barracks, Quantico, Virginia: The President is authorized to acquire under the authority and provisions of this Act all of the land specified in the report of the board appointed by the Major General Commandant, Marine Corps, dated January twenty-five, nineteen and eighteen, at Quantico, Virginia, as a permanent Marine Corps post, and the sum of $475,000, or so much thereof as may be necessary, is hereby appropriated for this purpose."

The report of the Board referred to (filed as Government's Exhibit No. 1 in this case) has attached thereto a plat or blueprint showing the outlines of the land proposed to be acquired, from which it appears that the streets and roads here involved were included within the whole area. And the President's Proclamation (Government's Exhibit No. 3) dated November 4, 1918, which particularly described the property by metes and bounds, specifically includes "rights in streets and alleys in public and private ways appurtenant or appertaining in any way to said above described parcel of land." Considering the time when the land was taken and the purposes for which it was taken, and the acquiescence of the defendant and other interested property owners in the taking without objection for twelve years, during which time the Government made costly improvements to the property, it is quite unreasonable to conclude that it was not the legislative intention that the property should be taken.

■ Objection to the maintenance of this suit, made in a motion to dismiss the amended bill, is also made on the ground that the defendant, the County of Prince William, is a political subdivision of the State of Virginia and therefore may not be sued in the District Court of the United States without the consent of the State of Virginia, which, it is said, has not been expressly given. The objection is untenable. Suits against counties and municipal corporations of a state are commonly maintainable in the District Court where other requisite jurisdictional elements exist. And it was expressly ruled in Lincoln County v. Luning, 133 U. S. 529, 10 S. Ct. 363, 33 L. Ed. 766, that such suits may properly be maintained.

My conclusion is that the plaintiff is entitled to a decree quieting its title to the property described in these proceedings and to a perpetual injunction restraining the defendant from prosecuting the ejectment suit

in the state court. Counsel may prepare and submit a decree to this effect.

As special findings of fact were made in the McIntosh Case in extenso (which are herein referred. to), and as the respects in which this case differs therefrom have been pointed out in this opinion, it seems quite unnecessary to make more specific and detailed findings of fact in this case.