**UNITED STATES v. ALDERSON et al.**

No. 194.

District Court, S. D. West Virginia.

Jan. 14, 1944.

Leslie E. Given, U. S. Atty., and John R. Dyer, Sp. Atty., Department of Justice, both of Charleston, W. Va., and Leland L. Yost, Atty., Department of Justice, of Washington, D. C., for the United States, petitioner.

Arden Trickett, of Charleston, W. Va., Hiram G. Williamson, of Williamson, W. Va., and Harry R. Taylor, of Keyser, W. Va., for State Road Commission of West Virginia.

HARRY E. WATKINS, District Judge.

This is a condemnation proceeding brought by the United States as petitioner to condemn 8,000 acres of land along the Ohio River, near Point Pleasant, in Mason County, West Virginia, for the construction of a T. N. T. plant. Just compensation has been agreed upon, or adjudicated, as to all property owners, except the State of West Virginia, which claims damages of approximately $100,000 for the taking of 20 miles of secondary state roads within the area. Petitioner claims that since the property owners outside the area still have reasonable access to their property, there is no legal liability on the State of West Virginia or the State Road Commission, to reconstruct or improve roads to take the place of those abandoned within the area, and therefore the state is entitled only to nominal damages for the road easements being acquired.

A commission of five persons, appointed by the court, viewed the property, heard the evidence, and awarded damages of $35,000. To this award both parties filed exceptions, and the case is now being tried de novo before a jury in this court. Both parties have filed briefs setting forth their respective contentions.

At the close of the evidence and prior to the arguments to the jury, I informed counsel of my ruling on all matters of law in controversy, and the nature of my charge to the jury. There are few reported decisions upon the measure of damages for the taking of public highways. There are now pending throughout the United States a large number of proceedings to condemn highways traversing lands acquired by the Federal ·Government for military purposes, making the subject one of increasing public interest. For these reasons, I am filing this opinion, setting forth my decision and my views on this subject.

Included in the 20 miles of roads taken were many roads which began and terminated within the area. As to them the State makes no claim for compensation.

Certain other roads closed (11, 12, 13 and 14) were through-traffic arteries. They were gravel roads and intersected the main north-south state highway (62) at points within the area. Before the taking of the roads in question, people living outside the area desiring to travel north or south would customarily travel over gravel roads 11, 12, 13 and 14, through the area to state road 62, which ran north and south along the Ohio River. The closing of that portion of roads 11, 12, 13 and 14 within the area now makes it necessary for these people to use other dirt and gravel roads (7, 11, 12/7, 14/1 and 15) outside the area in going to and from their homes.

The State of West Virginia only had an easement or right of way in the roads now closed. It did not own the roadbed. The roadbed is owned by the abutting property owners and they have been paid.

█ The first question for the jury in this case is whether roads 7, 11, 12/7, 14/1

and 15, which the State asks to be improved, are or are not reasonable, practical county roads. Are they reasonable, considering the amount of travel over them? If they were reasonable roads under all circumstances existing on February 18, 1942, the date of taking, then the State would not be entitled to any damages in this case except nominal damages.

The United States contends that on the date these roads were taken, the people living in that neighborhood had left to them other dirt and gravel roads, which, without improvements, constitute a reasonable outlet for them. The State says that those roads left to the property owners were not reasonable under the circumstances. If the remaining roads were reasonable, the property owners cannot complain, even though the present outlet is the longer way out. It is the settled law that a property owner is not entitled to more than one outlet to his property and cannot complain if he is not given the shortest way out. Sometimes the public interest requires the closing of roads which makes it necessary for a person, instead of going over a good, hard surfaced road, to go over dirt roads. If such a person had a way over dirt roads which were reasonable roads under all the existing conditions, then he could not complain that the hard surfaced road was taken away from him, because he is entitled to one way out—a reasonable way, and no more. Heavener v. State Road Commission, 118 W.Va. 630, 191 S.E. 574.

If the people in that vicinity have another reasonable outlet, even though it is not the shortest or the most convenient outlet, they cannot compel the State of West Virginia to furnish them a better road, and if the people cannot compel the State of West Virginia to furnish a better road, then the State of West Virginia could not compel the United States Government to pay for such improvements. United States v. Wheeler Tp., 8 Cir., 66 F.2d 977; United States v. Prince William County, D.C.E.D.Va., 9 F.Supp. 219, affirmed, Prince William County v. United States, 4 Cir., 79 F.2d 1007; Richwood v. City of Hinton et al., 117 W.Va. 223, 185 S.E. 411; Wayne County v. United States, 53 Ct.Cl. 417, affirmed per curiam 252 U.S. 574, 40 S.Ct. 394, 64 L.Ed. 723.

The State is only entitled to be made whole. It is not entitled to prof-it or to benefit because of the war and the construction of this war plant. The State's damages, if any, are what it will be legally compelled to do for the property owners. If the property owners cannot legally compel the State to make any of these improvements, then the Government is not required to make them or to pay for them. What can the people legally compel the State to furnish them in the way of roads, if that is the test? The answer is that a person is entitled to a reasonable highway. A reasonable highway in one part of the county where only a few people live might be a dirt road which would be slick and even impassable at times in the winter months, whereas, in other communities where the traffic was heavier and the need was greater, and the public interest so requires, such a road would not be a reasonable road. One cannot say as a matter of law that because a man lives on a dirt road which becomes slick and impassable for days or weeks during the year that such a road is not a reasonable road. We all know there are thousands of farmers in the mountainous State of West Virginia who live on dirt roads and who cannot travel over those roads at times during the winter months. The question is how much travel is there? What expenditure would be entailed to give that person an all-winter, every-day road? Would that expenditure be a practical expenditure? Would it be in the public interest? Those are matters which the jury should take into consideration in determining what is a reasonable road under all the circumstances.

The test is not what the State wants to build; not what the property owners want for their properties; and not what is the desirable thing to do. Both parties to this litigation would be very anxious to give these people the best roads possible. That would be the most desirable thing to do, but such is not the test. The question is, what is the reasonable thing under all the circumstances?

It is not a function of the National Government to build or maintain or improve the road system of the various states. That is a responsibility of the state governments, and not of the National Government. However, if the State of West Virginia has been damaged by reason of the closing of these roads, and thereby the State is legally compellable to spend money for improvements to make the roads rea-

sonable outlets under all the circumstances, then the State is entitled to such damages as are necessarily incurred.

■ The evidence shows that a large number of employes are now employed at this plant and that building in that vicinity has greatly increased. There is no doubt that the community itself has increased in size because of this war plant. It may be that because of the increase in population and increased traffic, better roads are now necessary to handle traffic, but if that be true, it is a responsibility of the State, and not the National Government. Therefore, the jury should not take into consideration any increased traffic brought about by the building of this war plant.

The first thing for the jury to ask themselves in this case is this: Are those roads outside the area over which the jury traveled in viewing the property reasonable country roads? Are they reasonable on the basis of what they saw and what they heard in the evidence in this case? Are they the ordinary type of roads found in the country where there is a similar amount of population and other similar conditions? Are those practical roads? If the jury finds that those roads are ordinary, reasonable, practical roads under all the circumstances, then the State is entitled to nothing more than nominal damages.

■■ If the jury believes that the roads are not reasonable, then their next inquiry should be, what improvements are necessary to make them reasonable roads, and what is the cost of such improvements? The burden of showing that these roads are not reasonable, and the burden of showing to the jury in dollars and cents how much it will cost to make them reasonable roads is upon the State. If the jury decides that the roads are not reasonable, then the jury should ask whether the State has proved to its satisfaction, with a reasonable degree of accuracy, what improvements are necessary and the cost of same. The jury's verdict should not be based upon guess or speculation. Where payment is made by a jury verdict, the amount of the verdict is final and no correction of erroneous estimate is possible. This is pay day so far as this case is concerned, and the jury is asked to make that final payment. Obviously the jury should award damages for only such amount, if any, as the State has proved that it actually sustained.

■ This is a condemnation proceeding between the United States of America and the State of West Virginia, and it is not a suit against the property owners outside of the area. These owners had no right in the maintenance of the status quo of the roads within the area as to entitle them to compensation, because neither the corpus of their properties nor pertinent rights have been disturbed to such an extent as to entitle these property owners to compensation. It is not a question of giving to these property owners as good access as they had before the closing of the roads in question; it is not a question of whether the roads taken were better roads than the remaining roads over which they will have to travel. The question is whether or not these property owners have been deprived of that type of road which it is the legal, compellable duty of the State Road Commission to maintain. If the jury believes from all the evidence in the case that the remaining roads leave to these property owners reasonable access to and from their properties under all the circumstances, then there is no legal, compellable duty on the State Road Commission of West Virginia to repair the remaining roads or to build new roads to take the place of the roads closed. If the jury believes that the roads were not reasonable roads as they existed on February 18, 1942, then the jury should allow as damages the cost of making improvements which are necessary to make the roads reasonable.

■ In the course of the trial the State objected to certain evidence offered by the United States to show that since the taking of the secondary roads in question, petitioner had expended over a million dollars in widening and improving State Route 62 passing through the ordnance area, and also that portion of Route 62 for a few miles on each side of the ordnance area. The evidence showed that the portion of Route 62 within the area, in its improved condition, is kept open for continuous and uninterrupted travel by the public at all times without permit or hindrance. It appeared from the evidence that both before and after the taking of the roads in question that people residing in that vicinity used Route 62 in going to and from Point Pleasant on the south and to other towns to the north; and that Route 62 is now a

part of the outlet used by the people in that section in going to and from market. Low, narrow bridges on old Town Creek and Ten Mile Creek north of the area were replaced by wider and higher bridges, thereby making Route 62 available for continuous and uninterrupted travel by the public generally to and from Point Pleasant during high water stages of the Ohio River, the high water being a real hazard for travel at this point in the past. In my opinion, this evidence is admissible. Petitioner should be allowed to show what it has done to give the people in that vicinity a reasonable outlet. It is true that the State bases its claim upon improvements to secondary state roads leading into Route 62, but this should not preclude the petitioner from showing what it had spent in improving other roads in that vicinity which tended to give property owners a better way to town. The evidence should be admitted and the jury permitted to decide what weight such evidence is entitled to receive upon the particular claim for improvements to the secondary roads. United States v. Prince William County, supra.