UNITED STATES v. 0.886 OF AN ACRE OF LAND IN VILLAGE OF FARMINGDALE, TOWN OF BABYLON, SUFFOLK COUNTY, N. Y.

No. M-678.

District Court, E. D. New York.

May 14, 1946.

Harry T. Dolan, Sp. Asst. to Atty. Gen. (John A. Jordan, of Brooklyn, N. Y., of counsel), for the Government.

Arthur Milligan, of Babylon, N. Y. (Jacob Bendersky, of Amityville, N. Y., of counsel), for Town of Babylon.

Andrew S. Derby, of Brooklyn, N. Y., for Roman Catholic Diocese.

INCH, District Judge.

This is a condemnation proceeding instituted by the United States of America on the findings of the Secretary of the Navy that the land embraced in the proceeding was necessary to be acquired for Naval purposes.

The object of the proceeding was to acquire the fee simple title to 0.886 of an acre to be used for the erection thereon of an extension to the then existing factory of the Ranger Aircraft Division of Fairchild Engine and Airplane Corporation, which corporation was manufacturing aeroplane motors for the United States Navy Department.

This piece of land so acquired was a part of a public road known as Conklin Street, Suffolk County, Long Island, New York, more precisely in the hamlet of East Farmingdale, Town of Babylon, in said county.

The petition in condemnation was filed on May 11, 1942, and an order of immediate possession was executed by this court the same day. Thereafter the construction of

the necessary building was proceeded with and completely closed off this portion of Conklin Street. The land in question is owned by the Town of Babylon, a duly constituted and existing Municipal Corporation of the State of New York and this owner is the sole claimant in this proceeding, being the sole and only fee simple owner of said land.

Conklin Street, prior to its closing as above, ran directly along the south side of the Main Line of the Long Island Railroad Company and was a through east-west route between the Jerico Turnpike to the north and the Sunrise Highway and Montauk Highway to the south. In the vicinity are a number of cemeteries of various religious denominations and a United States National Cemetery.

While this court, at the trial, allowed representatives of some of these cemeteries to be heard as to alleged inconvenience caused by the closing of this portion of Conklin Street, they were not considered, nor in fact could be, claimants or proper parties to the proceeding. The information given was considered helpful on another portion of the issue.

The sole question to be determined is the question of compensation, if any, to be paid to the owner of the land taken, to wit, the Town of Babylon. Before discussing the evidence, the law applicable to the situation presented will be considered.

First, "the federal government's power of eminent domain—necessarily implied as an efficient and appropriate means of exercising other powers expressly given—is to be used subject to the broad limitations of the Fifth Amendment. It is a stranger to the town. It can no more take, without compensation, their property rights, than it can those of an individual." Town of Bedford v. United States, 1 Cir., 23 F.2d 453, 457, 56 A.L.R. 360.

On the other hand, the test of the measure of damages is not what the state or town or property would like to get or even what might be more desirable, but rather what is reasonable and fair under all the circumstances. United States v. Alderson, D.C., 53 F.Supp. 528.

"The quasi corporation·such as a city or county holds such property (public highways and roads), by delegation of general sovereign power, authority for its acquisition and control being governmental and the interest exclusively that of the public. * * * thus when such property is taken by the power of the Federal Government, just compensation cannot be measured by the same standards as compensation for the taking of purely private property. Those who use the highways of the county have no proprietary interest in them. The county is responsible for their construction, maintenance, preservation and protection. * * *" Jefferson County, etc., v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564, 565.

The argument that the true measure of just compensation for the taking of such property as a road or highway is the cost of restoring the property to the same condition after the taking, as it was before, is untenable.

"The practicable view is to consider the road and highway needs of the civil division affected by the taking and to allow the governmental unit such sum in damages as will pay the cost of road facilities equal in utility to those destroyed. * * * The constitutional phrase 'just compensation' means a full and perfect equivalent for the property taken". Jefferson County, etc., v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564.

"We do not suggest that the city's damages upon the condemnation of its interest in a street must always be limited to a nominal amount. Frequently it occurs that the taking of a street causes substantial loss for which the city must be compensated. This happens when the municipality is required to establish and improve another street in place of the one condemned * * *. In such cases the measure of compensation is the cost of supplying the substitute". (Cases cited). Mayor, etc., v. United States, 4 Cir., 147 F.2d 786, 790.

Apparently there were three questions before the court in awarding compensation: (1) the value of the land taken. (2) The cost of providing a reasonably adequate substitute road. (3) Nominal dam-

ages. United States v. Des Moines County, Iowa, 8 Cir., 148 F.2d 448, certiorari denied 66 S.Ct. 56.

Counsel for claimant in his brief agrees that "the proper measure of damages in this proceeding is the cost of construction of a substitute way."

In the acquisition of a public road by condemnation we need not spend any time on the question of the value of the fee taken, the real issue remaining is as to compensation for a reasonably substitute road or nominal damages.

█ As to this the proper standard is not that of an inadequate road on the one hand nor an elaborate and high grade of highway on the other. It is that type of road which it is the legally compellable duty of the township to maintain. United States v. Wheeler, 8 Cir., 66 F.2d 977.

This issue is squarely presented to the court by the arguments of the counsel for the claimant and the counsel for the government. The facts present no real conflict and the law, as we have seen, governing compensation is the law followed by both.

Counsel for the claimant asserts that their proposed new and elaborate highway presents the only reasonable substitute road.

Counsel for the government asserts that the government has constructed and presented to the claimant a reasonably adequate and substantial substitute road.

█ Thus, if it is unnecessary to replace a road or to provide a substitute, the claimant here has suffered no money loss and has been relieved of the burden of maintaining the road taken. If the evidence shows that it is necessary for the government to provide a reasonable substitute road in order to readjust the system of highways, the claimant is entitled to the cost of constructing such reasonable and necessary substitute road, whether that be more or less than the value of the road taken. This cost will give to the claimant the actual money loss which has been occasioned by the condemnation and is the proper measure of damages for the taking. United States v. Wheeler, 8 Cir., 66 F.2d 977; Jefferson County v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564, certiorari denied 65 S.

Ct. 1016; Mayor, etc., v. United States, 4 Cir., 1945, 147 F.2d 786; United States v. Des Moines County, 8 Cir. 148 F.2d 448, certiorari denied 66 S.Ct. 56.

Guided by the above authorities we will now consider the evidence.

This evidence shows that the Town of Babylon proposes an expensive new highway having many useful and pleasing ·advantages not present before this portion of Conklin Street was taken and at a cost to the government of almost a million dollars. No one can blame the Town of Babylon for seizing an opportunity to secure for its tax payers, at such cost, such a pleasing and advantageous new highway at the expense of the government. But it is plain that the authorities of the Town of Babylon could never be compelled by them to construct it. I feel that this laudable effort must be put aside as not justified on the evidence in this proceeding.

There remains therefore the question as to the duty of the government to provide a reasonably safe and adequate substitute road which the evidence shows was a duty resting upon the government. This has been done, but before discussing the details thereof one or two other matters which were indicated to the court by its consideration of the evidence and its view of the locality should be first mentioned.

First, the building iself which closes that portion of Conklin Street has been considered. Could it be removed and thereby make further discussion of the issue unnecessary, or, if it could not be entirely removed could travel on Conklin Street be safely and properly restored by depressing that portion of Conklin Street under the building or by a tunnel through that portion of the building resting upon Conklin Street?

My visit ·to the building and vicinity which covered a careful inspection of its present use as well as its construction makes it plainly out of the question to either remove this building or by-pass it in the way indicated. This building is plainly an important part of a very large and substantial business. To do either of the above things would not only result in practically destroying the building but in an unneces-

sary and serious damage to an important industry, bringing into the Town of Babylon many thousands of workers. This ordinarily would seem to be something that would be most desirable to the business of that section of Long Island. Nor, as shown by the evidence subsequently taken before me, would it be desirable or even safe to try to restore Conklin Street by going around the present building.

The above solutions therefore must be dismissed as unreasonable.

This brings us to the question of whether or not the government has provided a reasonable and adequate substitute road. The motion by the government to strike the testimony of the Town of Babylon is denied.

In United States v. Alderson, D.C., 53 F. Supp. 528, the State of West Virginia claimed damages for the taking by the United States of some twenty miles of secondary state roads. The contest seemed to be over hard-surface roads or dirt or gravel roads. Yet the test is said to be not what is the best sort of road, but what is a reasonable substitute under all the circumstances.

As to the proposed elaborate highway claimed necessary by the Town of Babylon, this, in the court's opinion, as above already indicated, can be put aside as unreasonable and something that the government does not have to construct as a part of its duty to pay compensation.

We now come to what the government has done in furnishing a reasonably adequate substitute road.

The testimony shows that the government constructed a two-lane 20 foot highway, 8 inches thick, with 9 foot stabilizing shoulders and drainage facilities over Smith Street and New Highway. Prior to this, both Smith Street and New Highway were gravel roads in very poor condition. This work was started September 27, 1943, a few months after the condemnation proceeding was started and duly completed June 30, 1944, at a cost of approximately $124,000, all the cost of which was paid by the government. This road was thereafter accepted by the Town of Babylon which agreed that if such road was furnished it would maintain same at its own cost and expense. The government also gave to the State of New York a right of way easement in a strip of land 24 feet wide and 233 feet long at the northwest corner of New Highway. Therefore the government has furnished north of the railroad a substitute road of excellent construction consisting of the combination of Broad Hollow Road, Smith Street and New Highway, only a little more than a mile longer for east and west traffic on Conklin Street, and a fair estimate of time for such detour being three minutes longer.

Conklin Street throughout its length lies south and parallel to the tracks of the Long Island Railroad and there was no grade crossing involved. Broad Hollow Road of the substitute road under-passes the railroad track, but New Highway of the substitute road had a grade crossing where it crosses Conklin Street. Of course, this whole section of Suffolk County is accustomed to such grade crossings and these are adequately protected by warning lights and signs at both of the approaches and there would seem to be no reasonable objection to such a road merely because it had a single grade crossing however desirable the entire elimination of such crossing might be.

The court felt however that it should have some evidence on this question and accordingly testimony was offered which showed that merely to eliminate this single grade crossing would entail an expense of some $300,000, which item would make most unreasonable any demand by the tax payers on the county authorities for a road with no grade crossing.

Also another reasonably adequate substitute road already existed at the time of the condemnation and still exists. This is the road south of the railroad composed of Fulton Street, Route 109 and New Highway. This road is in excellent condition and is only about two miles longer for traffic using it and about five minutes more in time, and has no railroad crossing.

From the court's view of both the above northern substitute road consisting of Broad Hollow Road, Smith Street and New Highway and the southern substitute road

consisting of Fulton Street, Route 109 and New Highway, either of these roads can' be considered both reasonable and safe in view of all the surrounding circumstances for that portion of Conklin Street which has been taken.

No inference can be drawn that the southern substitute road was inadequate by the government providing the additional northern substitute road, for plainly the government felt that possibly providing the northern substitute road a mile shorter and a few minutes less time required, justified the giving to the tax payers of the Town of Babylon such additional substitute road bringing same into an excellent condition.

I have not overlooked the use of Conklin Street and other roads in this vicinity by those who wished access to the cemeteries. The majority of these cemeteries are south of the railroad and can be reached without crossing the railroad. The cemeteries north of the railroad can likewise be reached without crossing the railroad and this applies to both east and west traffic. I do not find any substantial reason advanced by those interested in these cemeteries which would persuade me to find that the government had not provided, in accordance with the law, an adequate and reasonable substitute road.

The above disposes of the issue as to the existence of an adequate and substitute road.

While it is merely a suggestion, it does seem to me that while most of those using these roads are aware of the necessity to detour because of the closing of Conklin Street at Broad Hollow Road and New Highway, some may not be so aware and find some inconvenience. It seems to me that the town or state authorities could very well, and at trifling expense, place a notice where a detour could be made so that those traveling east and west on Conklin Street would be notified in time and long enough ahead enabling them to make a choice. This however is but a suggestion and does not become an obligation of the government.

Accordingly, the claim of the Town of Babylon for relocation damages should be dismissed and the town should be awarded only nominal damages.