## BENEDICT v. UNITED STATES et al.

(District Court, E. D. New York. December 10, 1920.)

1. **Trusts ⬤═191(1)—Power to sell does not include power to convey to city for streets.**

Under Real Property Law N. Y. § 105, making void a conveyance by the trustee in contravention of the trust, a power given by will to trustees to sell real estate and to deliver conveyances therefor to the purchasers, does not authorize the trustees to convey portions of the real estate to the city for streets pursuant to Greater New York Charter, § 992, since the power was only to convey for a definite consideration and exemption from possible future assessment and street openings is not such a consideration.

2. **Evidence. ⬤═571(7)—Expert testimony as to values is not to be rejected in all cases.**

Though expert opinion as to the value of land taken by the government must be received with caution, it is not to be disregarded in all cases.

3. **Evidence ⬤═572—Conflicting expert evidence held to show property taken for army base exceeded appraised value.**

In an action by an owner of land taken by the government for an army base, evidence by four expert witnesses for the plaintiff, all of whom had peculiar experience to aid them in estimating values of water front property, such as that seized, opposed only by the testimony of two experts for the government, who had no peculiar knowledge of that particular kind of property, *held* to show the property was of the value claimed by plaintiff, which greatly exceeded that fixed by the appraisers for the government.

At Law. Action by George F. Benedict, as sole surviving trustee of the trusts created by the last will and testament of William Langley, deceased, against the United States and the City of New York, to recover for compensation claimed for property seized by the United States for an army base. Judgment rendered for plaintiff for the amount of the claim.

Gannon, Seibert & Riggs, of New York City (William H. Seibert and Royal E. T. Riggs, both of New York City, of counsel), for plaintiff.

Leroy W. Ross, of Brooklyn, N. Y. (Charles J. Buchner, Sp. Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

William P. Burr, Corp. Council, of New York City (E. J. Kenney, Jr., of New York City, of counsel), for city of New York.

GARVIN, District Judge. This action is brought under the Food and Fuel Act of August 10, 1917, section 10 of which provides:

"That the President is authorized, from time to time, to requisition foods, feeds, fuels and other supplies necessary to the support of the army or the maintenance of the navy, or any other public use connected with the common defense, and to requisition, or otherwise provide, storage facilities for such supplies; and he shall ascertain and pay a just compensation therefor. If the compensation so determined be not satisfactory to the person entitled to receive the same, such person shall be paid seventy-five per centum of the amount so determined by the President, and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

per centum will make up such amount as will be just compensation for such necessaries or storage space, and jurisdiction is hereby conferred on the United States District Courts to hear and determine all such controversies." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii.

The action is at law and a jury has been waived by consent.

The government took over a large tract of property, a part of the estate of William C. Langley, deceased, for an army supply base, on or about April 6, 1918, fixed its value by a board of appraisers at $1,796,522.20, with interest, and paid over 75 per cent. thereof, $1,347,- 396.65, with interest. This valuation was fixed at the rate of $1.10 per square foot. Plaintiff claims that the fair market value of the property on April 6, 1918, was $3,428,644, and that therefore he is entitled to recover $2,081,247.35, with interest at the rate of 6 per cent. per annum from the last-mentioned date, and an additional sum represented by the interest at 1 per cent. on $1,347,396.65 from April 6, 1918, to July 11, 1919, which was the date of the voucher for final payment, of the latter sum. The only issue is the reasonable value of the property taken.

The city of New York has been made a party defendant because there is a dispute regarding the title to Sixty-First, Sixty-Second and Sixty-Third streets, from the westerly side of First avenue to New York Bay, which lie within the boundaries of the property taken over by the government. The determination of this dispute does not affect the value of plaintiff's property. All parties agree that if the city owns these streets the opening thereof would be reflected in the value of the land adjoining; if the Langley estate is held to be the owner, it would use the land in the proposed streets for access to the water front upon the improvement of the property. The city claims title under a deed by the trustees of the Langley estate, executed and delivered pursuant to section 992 of the Greater New York Charter (Laws 1901, c. 466), which provides:

"The owners of land and of all the estate therein embraced within the lines of any street laid down and shown on the map or plan of the city of New York, and comprising all the land within said lines in an entire block in extent, may, without compensation and at their own expense, convey all their right, title, and interest therein, providing the same shall be free from incumbrances inconsistent with the title to be acquired by the city, to the city of New York, and upon the delivery of such conveyances to the corporation counsel of said city, with the money necessary to record such conveyances, and affidavits made by all such owners to the effect that the persons making them, are the owners of the estates in such lands so conveyed by them, respectively, and stating their interests, and that such estates in such lands are free of all incumbrances, except as aforesaid, together with abstracts of title and complete searches, if desired by such corporation counsel, it shall be the duty of such corporation counsel to examine such conveyances and papers, and if such title shall not be rejected for good cause, by such corporation counsel, he shall cause the said conveyances to be recorded in the office in which conveyances of real estate are recorded in the county in which such lands are located within sixty days after their delivery to him, and file them with the comptroller of such city, and thereupon the city of New York shall become vested with the title to said lands to the same effect and extent as if they had been acquired by a proceeding taken for the opening of that portion of said street; after the making and acceptance of such conveyances, no proceedings to open the lands so conveyed

shall be taken or maintained, nor shall the lands fronting on that portion of the street so conveyed, and extending to the center of the block on either side of such portion of said street so conveyed, be chargeable with any portion of the expense of opening the residue or any portion of the residue of such street, except the due and fair proportion of the awards that may be made for buildings as aforesaid."

The will of William C. Langley gave to his trustees power of sale expressed as follows:

"I hereby authorize and empower my said executors and trustees and their successor and successors to sell at their discretion as to the time and terms and at public or private sale, all and every part of my real estate, and to execute and deliver all necessary and proper assurances and conveyances for the same to the respective purchasers thereof."

Section 105 of the Real Property Law (Consol. Laws N. Y. c. 50) reads:

"If the trust is expressed in the instrument creating the estate, every sale, conveyance or other act of the trustee in contravention of the trust except as provided in this section, shall be absolutely void."

[1] The conveyance by the trustees under the charter was not such a sale as the trustees could make under the will; it was therefore void and the city acquired no title. The provision of the will, giving power to sell, did no more than to confer the right to convey title for a definite consideration. Exemption from possible future assessment for street openings cannot be held to be such a consideration.

The question of just compensation must now be determined. That is based upon the market value of the land. This tract was peculiarly valuable as water front property. In fact there seems to have been no other site in the harbor so desirable. Four experts were offered by the plaintiff, and two by the government. Experience has revealed that in many cases, expert opinion must be received with caution but in the case at bar there seems to be less reason for rejecting the conclusions of the plaintiff's witnesses than often appears because the reasons which they advance are, generally speaking, sound, and are, in the main, far more convincing than the grounds upon which defendants' witnesses place their valuation. The latter are well-known real estate experts, but were not particularly conversant with water front values on New York Bay.

[2] Plaintiff's witnesses as to value include a former borough president, whose official duties would naturally acquaint him to some extent with land values in the borough of Brooklyn, including water front property, two real estate men of prominence, and a fourth, Mr. Graham, whose appearance, demeanor, experience, and qualifications (which have been heretofore accepted by city and state, as well as by other cities and by numerous conservative and substantial private interests), were unusually impressive and gave to his testimony a weight that cannot be disregarded. It is true he has represented and is representing the estate involved, but all who are testifying as to values have an interest and are appearing for one of the parties to the action. The court has reached the conclusion that this is a case where expert testimony can be safely accepted as a basis for a determination of

values, unless the doctrine, sometimes advanced, that the testimony of real estate experts must be disregarded, is to be adopted in all cases. With this doctrine the court is not in agreement.

[3] The government claims that the issue is not the question of what is just compensation, but whether or not the measure of value fixed by the War Board of Appraisal is less than the fair and reasonable value. Even if that be conceded, a finding that the value so fixed by said board is less than a fair and reasonable amount is amply justified by the evidence.

Plaintiff will therefore have judgment according to the prayer of the complaint.