## UNITED STATES v. CERTAIN PARCELS OF LAND IN CITY OF SPOKANE, SPOKANE COUNTY, WASH., et al.

No. 203.

District Court, E. D. Washington, N. D.

July 24, 1942.

Edward M. Connelly, U. S. Atty., Harvey Erickson, Asst. U. S. Atty., and Hart Snyder, Sp. Atty., Department of Justice, all of Spokane, Wash., for petitioner.

Witherspoon, Witherspoon & Kelley, of Spokane, Wash., for Finch Inv. Co.

G. M. Ferris, B. A. Farley, and Paul F. Schiffner, all of Spokane, Wash., for defendant City of Spokane.

SCHWELLENBACH, District Judge.

This is an action in which petitioner is condemning certain property in order that it may construct thereon a low-cost housing project. After a trial before a jury and the return of the verdicts thereby, the defendants Finch Investment Company and City of Spokané interposed and are now urging motions for new trial. I will consider the motions separately.

The Finch Investment Company Motion

Many years ago this defendant acquired 180 acres of land of which 40 acres now are being taken. Among the businesses conducted by this defendant is that of the acquisition and sale of real estate. Shortly after acquiring this property, the Investment Company platted and improved it with the object of selling it lot by lot as a subdivision. While, from time to time through the years, and even during the last three years, sales have been made in the area, they constituted a comparatively small part of the 180 acres. The Investment Company has at all times held the land with the hope that a condition would someday arise when this property could be moved on the market. The Investment Company's motion is based upon the contention that the Court committed error in the instructions by the use of the language: "There is complete agreement be-

tween all of the witnesses for all parties that the highest and best use and the most profitable use to which this land could be put was for a subdivision and selling in separate lots to individuals."

The complexity of the problem of submitting this case to the jury both by the counsel through their witnesses and by the Court through its instructions arose in the conflict between two well-known rules in the law of eminent domain. The first is that the measure of damages is to be its market value as of the date of taking. The second is that the owner is to have that value determined upon the basis of the highest and best and most profitable use to which the property may reasonably be put.

Petitioner met this by having its witnesses suppose a hypothetical purchaser who might have purchased it upon the day of the taking with the intent and purpose of placing it upon the market for resale lot by lot. The Investment Company contended that, since it was in the real estate business, it was entitled to have the value fixed upon the basis that it sold the property lot by lot. Both parties agreed that any lot by lot sale would require certain expenditures in the nature of improvements, carrying charges, etc. There was no great variance as to the amount of these costs. Nobody contended that all of the separate lots could have been sold simultaneously on the day of the taking by the petitioner. It would have been the sheerest nonsense to have so contended. Certainly that would not have been the highest and most profitable use to which the property could have been put. The divergence in the testimony came from the fact that petitioner's witnesses testified that their supposed hypothetical purchaser would require a cushion of $110 per lot to protect him against possible loss in his investment and to insure him a reasonable profit. The experts on both sides agreed that approximately $160 per lot was the reasonable amount to expect after the deductions for costs. That left $50 per lot on petitioner's theory. The Investment Company contended that, since it already had its money in the property, it didn't need any cushion against possible loss and that it was entitled to any profit which it might make out of the transaction. So its experts testified that the value on the day of the taking was approximately $160 a lot. Possibly I should have instructed the jury to consider the case exclusively on petitioner's theory. That is what the Investment Company now contends I did. That contention is based upon the fact that I used the language above-quoted. I cannot agree that the use of this language is subject to such a construction. I am positive that this language, when considered in connection with the instructions as a whole, does not mean what the Investment Company contends. I have had the instructions transcribed and I have read them. I told the jury to consider the instructions as a whole and not to place any undue emphasis upon any particular portion. This case was presented to the jury in such a way that it had an opportunity to consider the theory of both parties.

The Investment Company's objections now urged are without foundation and its motion for a new trial must be denied.

## The City of Spokane's Motion

The City asks for a new trial on the ground that the jury allowed it nothing for certain water mains which it had installed thirty years ago at the time of the original development by the Investment Company. Its testimony was that these mains had an average life of 60 years and, since only one-half of that life-term had expired, they were now worth $727.65. The City's testimony, however, showed that they were left in the ground for the reason that their removal would have cost 45 cents per foot and that their value when removed would only be 25 cents per foot. There was no testimony that it was necessary for the City to substitute other mains to furnish the service which 30 years ago had been contemplated. Nor was there any testimony to show that during the thirty-year period there had been any one living near these mains who made use of water supplied by them or who paid a revenue for such use.

Petitioner urges that the trial court has no power to consider a motion for new trial based upon any claimed mistake by the jury in the amount of the award. This contention is based upon two decisions rendered in this District by Judge Hanford. United States v. Tennant, D.C.1899, 93 F. 613; United States v. Freeman, D.C.1902, 113 F. 370. In those two decisions, Judge Hanford reasoned as follows: The Federal Statute provided, "[Condemnation proceedings] shall conform, as near as may be, to the practice in condemnation proceedings

in the courts of the state in which the land is situated, prescribed by the laws of the state. 1 Supp.Rev.St. U.S. (2d Ed.) pps. 601, 780." 40 U.S.C.A. § 258. He concluded that the Washington State statutes prescribed a special proceeding in condemnation cases in which the general rules of procedure are not applicable. Ballinger's Ann. Codes & St. Wash. Title 31, c. 5, section 5616 et seq.; Seattle & M. Railway Co. v. O'Meara, 4 Wash. 17, 29 P. 835. He pointed out that this chapter nowhere gave to the trial court the power to set aside a verdict or grant a new trial and that it did provide in Section 5624 that an "appeal shall bring before the supreme court the propriety and justness of the amount of damage in respect to the parties to the appeal." Judge Hanford said: "Provisions of the chapter throughout are consistent with the theory that the determination of the jury as to the amount to be awarded to an owner of property taken for public use may be reviewed by the appellate court, but not by the judge presiding at the trial." United States v. Tennant, supra. He affirmed that position in United States v. Freeman, supra.

■ The reasoning of these two cases requires the acceptance of the conclusion that that portion of the Washington State statutes relating to condemnation procedure is exclusive and that its failure to empower the trial court to correct the jury's mistakes deprives the trial court of that power. The precise question has never been passed upon by the Washington State Supreme Court. It has, however, directly held that the condemnation procedure statutes are not exclusive. Barker v. Seattle, 97 Wash. 511, 166 P. 1143, 1145. There the question was the power of the trial court to vacate the judgment of award. The statute—Remington's Code 7783—provided: "Such judgment or judgments shall be final and conclusive as to the damages caused by such improvement unless appealed from. * * *" In the Barker case the Supreme Court of Washington, discussing a contention precisely parallel to that accepted by Judge Hanford and argued by petitioner here, said: "We do not view this language as an attempt on the part of the Legislature to curtail the power of our superior courts to vacate and set aside judgments rendered in eminent domain proceedings. Being courts of general common law and equity jurisdiction, and section 16, article 1 of our Constitution providing, in substance, that the exercise of the power of eminent domain shall be by judicial proceedings, and that compensation shall be ascertained therein 'as in other civil cases,' it seems plain to us that the inherent power of the superior courts to vacate such judgments upon proper showing remains undisturbed."

Repeatedly the Washington Supreme Court has enunciated the doctrine of the inherent discretionary power of the trial court to set aside verdicts on the ground that they were against the evidence. Seattle v. Williams, 41 Wash. 366, 83 P. 242; City of Renton v. Dykeman, 61 Wash. 330, 112 P. 348; Stimson Mill Company v. Troxel, 113 Wash. 108, 193 P. 213; In re Skagit River Power Site, 117 Wash. 368, 201 P. 300, 301. In the latter case, the court said: "In all those cases where a motion for a new trial does not have to be supported by affidavits, and where the witnesses have testified in person at the trial, the rule that the trial judge has peculiar advantages for the exercise of discretion is more specially applicable."

I am confident that had these and many later similar cases been available at the time he decided the Tennant and Freeman cases, Judge Hanford's conclusion would not have been as is outlined in those opinions. As a consequence, I am unable to follow them.

■ However, I see nothing which would justify granting a new trial to the City. I submitted the case to the jury upon the theory of a very liberal interpretation of the case of Town of Bedford v. United States, 1 Cir., 23 F.2d 453, 454, 56 A.L.R. 360. I submitted it upon instructions proposed by the City which read in part: "But you shall determine the value by the same standards which are applied in arriving at the value of property owned privately." The philosophy of the Bedford case is expressed in the language: "For present purposes, a town may be regarded as a group of taxpayers, charged, inter alia, with the burden of building and maintaining such highways as common convenience and necessity require. Any act that increases those burdens takes additional money from that group of taxpayers. A highway once built exonerates, pro tanto, that group; taken or otherwise destroyed, a new burden is imposed. To take the furnished means of meeting a liability imposed by law has the same effect as taking property technically vested; loss accrues."

902

· There is no testimony here of any liability upon the part of the City to substitute other water mains for those which petitioner took. Judged by the ordinary standard of·damage in a condemnation action, the City lost nothing. No one would be willing to pay anything for water mains, the removal of which would cost 45 cents a foot in order to recoup a junk value of 25 cents a foot. The jury very logically concluded that the City had sustained no loss on this item.

The City's motion for a new trial is denied.