UNITED STATES v. CERTAIN PARCELS OF LAND SITUATED IN FAIRFIELD, BALTIMORE, MD., et al.

No. 1814.

District Court, D. Maryland.

March 31, 1944.

Wilmer H. Driver, Sp. Asst. to the Atty. Gen., for the United States.

Allen A. Davis, of Baltimore, Md., for Mayor and City Council of Baltimore.

COLEMAN, District Judge.

This is a condemnation proceeding instituted under various Acts of Congress, including the Second War Powers Act of March 27, 1942, 50 U.S.C.A.Appendix § 632, involving a large amount of property, improved and unimproved, located in that part of Baltimore known as Fairfield and taken by the Government for the construction of facilities to be used for the construction and repair of ships, and the operation of such facilities in connection with the Bethlehem-Fairfield Ship Yard, Inc.

Numerous private lot owners were affected by this proceeding. They have either settled their claims with the Government for their respective interests taken, or have litigated their claims and been awarded compensation after jury trials in this Court. The Mayor and City Council of Baltimore were also made defendants in this proceeding because of the ownership by the municipality of certain public alleys running through parts of the land condemned, which was laid out some years ago as a residential development, intersected by both streets and alleys, which were dedicated and accepted by the City. Both the streets and the alleys were, however, merely "paper" improvements, because never actually laid out, although under the beds of some of the would-be streets the City had actually constructed some sewer and water lines, and by agreement with the City no part of the bed of any of the streets was condemned, contrary to what was done with respect to the bed of certain of the alleys. No sewage or other lines or any improvements had ever been constructed under or upon these alleys. The land constituting the beds of these alleys, which are 20 feet wide, has an area of approximately 1½ acres, or, roughly, 67,900 square feet. None of these proposed alleys was ever abandoned by the City. The City has filed an answer to the Government's petition, claiming compensation for this area which has been taken. In the various jury awards made to property owners whose parcels bordered on these proposed alleys as well as upon the proposed streets, the effect of the public easement created by these rights of way was taken into consideration by both the Government and the property owners in presenting, at the trial of the various cases, the values placed by the respective parties upon the parcels of land involved. However, the question of what, if any, compensation the City is entitled to, by virtue of the condemnation of the beds of these alleys, was deferred and heard separately by the Court, by agreement between counsel for the Government and for the City, jury trial being waived.

It is the contention of the Government that these alleys had, at the time of the taking, in and of themselves, no market value,—that all their value has gone into the abutting lots, and that, therefore, the City is entitled to recover for the taking of these alleys no more than nominal damages. On the other hand, the City claims that at the time of the taking, the owners of the abutting lots possessed, according to Maryland law, only what is called a naked fee, whereas the City possessed the entire beneficial use of the land embraced in the alleys; that the lot-owners suffered no pecuniary damage by the taking, whereas the City has lost pecuniarily the value of the land embraced in the beds of these alleys; that it has lost not only its highway rights therein but also its rights to lay sewer and water pipes and other subsurface or surface structures therein or thereon; that if and when the general area embraced in this condemnation proceeding is devoted to either private industrial or residential purposes, the City will be called upon to provide and maintain such structures, and will be required to pay the then owners of the land for re-acquisition of the right to do so; and that, therefore, since just compensation for the taking of private property for a public use must be the full and perfect equivalent of the property taken, so that the owner shall be put in as good a position pecuniarily as he would have occupied if his property had not been taken, the City is entitled to be paid the fair market value at the time of the taking of these alleys which, according to the Government real estate expert who testified

and the fairness of whose testimony, on a purely appraisal basis, is not questioned by the Government, is 8¢ per square foot, or the sum of $5,432.

First, it is well settled that the acquisition of a city street or highway by the Federal Government through condemnation proceedings is within the protection of the Fifth Amendment with respect to just compensation. Wayne County, Kentucky, v. United States, 53 Ct.Cl. 417, affirmed 252 U.S. 574, 40 S.Ct. 394, 64 L.Ed. 723; United States v. Wheeler Township, 8 Cir., 66 F.2d 977; Town of Bedford v. United States, 1 Cir., 23 F.2d 453, 56 A.L.R. 360. We come, therefore, immediately to the question: How is just compensation, that is, the amount of damages, to be determined in such cases? The correct answer to this question depends upon a determination, first, of the precise character of the municipality's interest in the property taken from it.

In Maryland, it has been settled for nearly a hundred years that while owners of property abutting upon a city street, own the fee in the bed of the street, this is merely a naked fee since it is held subject to the public easement to use the street; that is to say, the City possesses, for the benefit of the public, the entire use of the street. Such being true, the abutting property owners are entitled to only nominal damages for the condemnation of their naked fee interest. Moale v. Mayor, etc., of Baltimore, 5 Md. 314, 61 Am.Dec. 276. See also McCormick v. Mayor, etc., of Baltimore, 45 Md. 512; Pitts v. Baltimore, 73 Md. 326, 21 A. 52; Mayor & City Council of Baltimore v. Frick, 82 Md. 77, 33 A. 435; Mayor, etc., of Baltimore v. Broumel, 86 Md. 153, 37 A. 648; Broumel v. White, 87 Md. 521, 39 A. 1047. When we turn, however, to a consideration of the measure of damages to which the City is entitled by reason of the taking of the easement with which it is vested in trust for the public, we do not find that the law may be said to be settled, at least in its application to facts such as exist in the present case. There is no announcement in the Maryland decisions squarely upon the point. See United States v. Certain Parcels of Land, D.C., 43 F.Supp. 687; United States v. Prince William County, D.C., 9 F.Supp. 219, affirmed 4 Cir., 79 F.2d 1007, certiorari denied 297 U.S. 714, 56 S.Ct. 590, 80 L.Ed. 1000. The first named case arose in this District; the second, in the Eastern District of Virginia, but Judge Chesnut decided both cases. The Supreme Court, however, has held that the owner of the easement and the owner of the bed of a street are not jointly entitled to compensation for the whole but that their respective interests must be separately valued. Boston Chamber of Commerce v. Boston, 217 U.S. 189, 30 S.Ct. 459, 54 L.Ed. 725. See also Fitzhugh v. United States, 59 App. D.C. 285, 40 F.2d 797. Thus, the sum of the respective values may be more or less than the value of the entire tract taken if considered as an entity. The same rule has been followed in Maryland with respect to valuation of the interests of a landlord and his tenant, it being the law that the sum of these interests in property taken by condemnation may be more than the value of the property as a whole in one ownership. Baltimore City v. Latrobe, 101 Md. 621, 61 A. 203, 4 Ann.Cas. 1005; Gluck v. City of Baltimore, 81 Md. 315, 32 A. 515, 48 Am.St.Rep. 515.

Relying upon the aforegoing principles, the City maintains that just compensation to it can be nothing short of the fair market value on a square foot basis of the alleys at the time of the taking by the Federal Government.

In Town of Bedford v. United States, supra, the United States took by eminent domain for a veterans' hospital in the town of Bedford, Massachusetts, a tract of land which included part of a roadway owned by that town. As set forth in that case, in Massachusetts, just as is the case in Maryland, towns do not own the fee in their streets or highways, but merely a public easement. The lower court denied recovery to the town but the Court of Appeals reversed the lower court and allowed the amount that was stipulated as the extent of the damages to the town, if the town should be found entitled to recover, namely, $10,000. However, the ground upon which recovery was allowed was that actual loss had accrued to the town in that the taking of part of the road by the Federal Government cut off about a half mile of the road, this severance rendering other portions unavailable and requiring new roads to be built. In other words, the Court found that there was destruction of tangible municipal facilities. The Court said (page 454 of 23 F.2d, 56 A.L.R. 360):

"Towns are permitted to recover for damages done town ways, for the simple reason that thus additional burdens are im-

posed upon the taxpayers required by law to maintain such ways. * * * Towns cannot discontinue highways without becoming liable for damages to landowners injured thereby. * * *

"To take the furnished means of meeting a liability imposed by law has the same effect as taking property technically vested; loss accrues. Bedford's right in Springs road was as real a property right as a leasehold of the same land, or as an abutting owner's right of access to the street. * * *

"The road was, as already noted, a furnished means for the performance of a legal duty. While the town had not the right of exclusive user, it did have the right to exclude all not using the highway in a manner consistent with the equal rights of other users, who in turn had rights that the town was bound to maintain."

That the ratio decidendi of the Bedford case was the destruction of a facility which the taxpayers of the town had a legal right to use and were using, and for which, therefore, a substitute had to be supplied by the town for the benefit of its citizens, the cost of which was a matter of definite appraisal, is borne out by the fact that in the course of its opinion, the Court relied upon the case of Town of Nahant v. United States, 1 Cir., 136 F. 273, 69 L.R.A. 723, and quoted from the opinion in that case, a part of which quotation is as follows (23 F.2d 453, at page 455, 56 A.L.R. 360): " 'So far as *lands* within ways dedicated to public use and travel are concerned, it is not seriously contended in argument that the municipality had any title thereto which it can set up for purposes of compensation. Therefore we need not deal with any possible question in that respect. It is contended, however, that property in structures, such as pipes and other material connected with sewer and water systems, and in artificial structures in connection with streets, may become the subject of municipal property, and thus stands differently.' " (Italics inserted). The Court in the Bedford case then goes on to point out that this contention of the Town of Nahant was sustained on the ground that the structures in the streets were municipal property. Continuing to quote from the opinion in the Nahant case, the Court said (pages 455, 456 of 23 F.2d, 56 A.L.R. 360): " 'There is no just reason, under such circumstances, for saying that because of the ordinarily accepted legal fiction that structural property attaches to the legal title to the realty, and because the municipality holds the legal right to use the land, rather than the legal title to the land, the municipal trustee of the body politic which paid for the structural property should not have just compensation from a distinct and independent entity which takes it, not as owner of the land, but under arbitrary right, and for a purpose entirely different than that for which the property was originally designed and paid for, and to which it was originally dedicated. * * *' " The Court then went on to say that these views were reaffirmed in a companion case, United States v. Town of Nahant, 1 Cir., 153 F. 520.

That allowance of recovery in the Bedford case was predicated directly upon actual proven loss to the town by the taking, is further clarified by the following contained in the closing part of the Court's opinion in that case (page 456 of 23 F.2d 56 A.L.R. 360): "The real question is one of the incidence of cost or expenditure; and there is no such thing as compensation, within the fair meaning of the word, unless the separate entity that under sovereign power appropriates a part of this town way is required to pay the expenses it thus imposes upon the town within whose territory it makes the taking."

To the same effect is United States v. Wheeler Township, supra. There, just as in the Bedford case, the township was awarded compensation for the increased burden of maintaining roads at increased lake levels caused by the Government's condemnation of flowage rights. The Court there said (pages 984, 985 of 66 F. 2d): "When we come to the method of ascertaining the amount of compensation— the measure of damages or compensation— we encounter the peculiarities of this situation. We have a safe starting point in the above fundamental legal proposition that the township must be made whole from money loss. When the ordinary measure of loss (decrease in actual or assumed 'market value') cannot be applied, as here, then 'whatever is necessary to be considered in order to determine what is an equivalent for the appropriation of private property is germane to the question of compensation.' * * * It is the duty of the township to maintain its roads and that duty can be enforced * * *. The expense therefor comes from the taxpayers of the township, for whom the township

is (in a sufficient sense) trustee and representative. The right of the township and its taxpayers is to maintain such roads with the lake at natural levels and 'the right to exoneration from the burden of constructing and maintaining a substitute way is a valuable property right belonging to the group of taxpayers called a town.' Town of Bedford v. United States [1 Cir.], 23 F. 2d 453, 456, 56 A.L.R. 360. To the extent that this burden has been increased by this taking there is a deprivation for which the law requires compensation. Is this extent to be measured by the present inadequate road standard or by some other? To take the present standard seems unfair and insufficient. The proper standard is not that of the present inadequate roads on the one hand nor a high grade of highway on the other. It is that type of road which it is the legally compellable duty of the township to maintain. * * *"

Assuming that the reasoning contained in the aforegoing cases is sound, we, nevertheless, have in the case before us this very definite factual difference: Need for the alleyways has been extinguished by these condemnation proceedings because thereby has been extinguished private ownership of every parcel of ground abutting on any of these alleys, although the area of the proposed streets has not been condemned, and although they do intersect the alleyways condemned, in the sense that the latter are designated as running behind all the lots condemned which are intersected by the proposed streets. In other words, there is no necessity to supply the public with other ways of ingress and egress which would be a substantial substitute for the alleys taken. Unless and until the Federal Government abandons its public use of the property and deeds it back to private owners or to the City, there is no showing of any need for alleys, streets or other ways except such as the Federal Government or its licensees may require. However, the City claims that this distinction has no legal significance in so far as respects the City's right of recovery in the present case. In support of this contention, much reliance is placed upon United States v. Benedict, 2 Cir., 280 F. 76.

In the Benedict case, the United States requisitioned a tract of shore land in Brooklyn, including strips across it which had been conveyed by the owner to the City for streets which had not been opened as streets. Compensation was awarded on a square foot valuation of the entire tract. The trial court (D.C., 270 F. 267) had fixed the amount of just compensation for the taking and had held that such compensation was the same regardless of the City's interest in any part of the property taken and, thereupon, the entire recovery was awarded to private interests because found to have title to the entire tract. From this, both the United States and the municipality appealed. On appeal, in allowing a proportionate amount of the condemnation judgment to the municipality, the Court said (page 82 of 280 F.) :

"By the conveyance of 1899 the city became vested with title to a portion of the land taken by the United States, for which the defendant in error has been awarded compensation, and the extent of that land is proven and found to be 81,120 square feet, and it was worth $2 a square foot on April 6, 1918. Although it owned this land, it held it 'in trust for the public use.' * * *

"It is now argued that, with a title of this kind and on evidence proving that 'whether or not the city held title to' the 81,120 square feet the value of the entire property was just the same, and the award to the Langley Estate should not be disturbed in amount. But, if the record be examined to ascertain why the expert witnesses substantially agreed that the value of the land was unchanged by the conveyance for street purposes, it is found that they all said in effect that the street value (i.e., land value of the streets) was 're-flected' in the value of the land as bounded or limited by the proposed streets.

"This means that, if and when the streets were opened, the abutting property would, by reason of the streets, be worth at least as much more as was the value of the land appropriated for highway purposes. But no streets have been opened in the physical sense, and the city owns the surface to be devoted to streets. That it is held in trust for a public purpose does not in any way change its market value, and the city has been as much deprived of what it owned as was the Langley Estate. To put it another way, the Langley Estate has been awarded all that the land is worth, streets and all, because, when streets are opened, the land they have left will be worth the amount of the award. This will not do. The government is called upon to make just compensation for things as they are, not as they may be hereafter, and the

compensation must flow to those who are actually deprived of what they own."

Both the United States and the City sued out writs of error,—the City on the ground that the award allowed it did not include compensation for the value of the portions of the streets condemned by the Federal Government, between the high water line and the pier line. The Supreme Court, however, held that the City, by its voluntary acceptance of the award made to it pursuant to the judgment as modified by the Circuit Court of Appeals, was, in effect, estopped from contesting the correctness of same. Accordingly, the writ of error as to the City was dismissed by the Supreme Court and the judgment below as to the United States was affirmed. 261 U.S. 294, 43 S.Ct. 357, 67 L.Ed. 662.

It will thus be seen that the decision of the Supreme Court in the Benedict case was limited to an affirmance of the judgment with respect to the United States alone, and that there was no adjudication upon the precise question with which we are here concerned. Also, there was a factual difference in the Benedict case as decided by the Circuit Court of Appeals which is important. That is to say, by the findings in that decision, the City of New York acquired from private owners, title in fee to the bed of the streets in question, subject to the requirement that the streets be held in trust for the public use. In other words, in the Benedict case, the record owner of the fee simple title to the land taken from the City at the time of the taking was the City itself. In the case before us, however, the City of Baltimore never owned the land embraced in the platted alleyways but merely an easement with respect thereto which it held for the public benefit. While, of course, we can do no more than speculate as to what, if any, importance the Circuit Court of Appeals in the Benedict case would have attached to this distinction, we believe that it is an important one, on legal principle, and the language employed by Circuit Judge Hough, who wrote the opinion in the Benedict case from which we have heretofore quoted, clearly indicates that the award to the City of the full market value of the land embraced in the streets was predicated upon the fact that the City was the fee simple owner, for Circuit Judge Hough said (280 F. 76, at page 82), the fact that the land "is held in trust for a public purpose does not in any way change its market value, and the city has been as much deprived of what it owned as was the Langley Estate."

Because of the distinctions which we have noted in the above analyzed cases upon which counsel for the City of Baltimore rely in the present case, we would be disposed, without more, to conclude that the City is entitled merely to nominal damages. However, there is a further point which we believe confirms the correctness of so deciding. We are dealing here with rights of way which not only had never actually been constructed but were merely designated on a plat, and at most, even when completely constructed, were not to be "streets" as we usually understand that term, but "alleys".

■ The term "alley" or "alleyway" is conventionally understood in its relation to towns or cities as a narrow street, passage or way in common use, for the special accommodation of the property it reaches. See Johnson v. Herring, 89 Mont. 156, 295 P. 1100; Atchison, T. & S. F. Ry. Co. v. City of Chanute, 95 Kan. 161, 147 P. 836. That is to say, it is a right of way not meant primarily as a substitute for a street, but to serve as a means of accommodation to a limited neighborhood for chiefly local convenience, and not for general passage or travel as are streets. See Talbert v. Mason, 136 Iowa 373, 113 N.W. 918, 14 L. R.A.,N.S., 878, 125 Am.St.Rep. 259, and cases therein cited. Such being true, there would appear to be full justification for holding in the present case that regardless of legal refinements with respect to ownership, the City of Baltimore, in the present case, has been deprived of considerably less than would have been the case had the beds of streets and not of alleys been the subject of the condemnation.

■ It is true that if and when the tract of land through which these platted alleys ran is again subjected to private development, the restoration of alleyways may become desirable if not necessary. Also, we do not overlook the fact that the utilization of alleys, just as of streets, may become important if not necessary for subsurface or surface structures. However, as already explained, a present requirement for any such utilization has been completely removed. The City has not been disturbed in the beneficial ownership which it has in the platted streets themselves, of which these platted alleyways are at most

mere adjuncts. The private property which it was contemplated they might serve no longer exists as such. Indeed, prior to the taking by the Government, on very few of the private lots had any improvements been erected and, as already explained, the City had never constructed, and for aught that appears, had never contemplated the construction on or under these alleyways of any public utilities. Thus, every circumstance in the present case bears witness to the fact that the easement of which the City has been deprived by the taking of these alleyways had merely a nominal value. Therefore, we must conclude that to award more to the City would be to depart from the long established rule for the determination of what is just compensation in a proceeding of this kind. Furthermore, we believe our conclusion is in entire harmony with the view adopted by Judge Chesnut in United States v. Prince William County, supra. To the same effect is United States v. Certain Parcels of Land, D.C., 45 F.Supp. 899. In short, in reaching this conclusion we have endeavored to follow the ruling of the Supreme Court as stated in United States v. Miller, 317 U.S. 369, at page 374, 63 S. Ct. 276, at page 280, 87 L.Ed. 336, 147 A. L.R. 55, that "Where, for any reason, property has no market, resort must be had to other data to ascertain its value; * * *."